IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

KERRY KOTLER,

                                                    Civil Action No.
                              Plaintiff,            9:17-CV-0394 (GTS/DEP)

        v.

MAUREEN BOSCO, Executive Director,
Central New York Psychiatric Center, *et al.*,

                              Defendants.

_____

APPEARANCES:

FOR PLAINTIFF:                                OF COUNSEL:

KERRY KOTLER, *Pro se*
936 Walker Avenue
Bellport, NY 11713

FOR DEFENDANTS:

BARBARA UNDERWOOD                            KATIE E. VALDER, ESQ.
Acting New York State Attorney General       Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

        This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by

*pro se* plaintiff Kerry Kotler arising out of his confinement in the Central

New York Psychiatric Center ("CNYPC"), a facility operated by the New

York State Office of Mental Health ("OMH"). Although the claims raised by plaintiff in his original, first amended, and second amended complaints were considerably broader, they have been narrowed as a result of the court's review of his claims pursuant to 28 U.S.C. §§ 1915(e), 1915A. The only cause of action that remains pending is a First Amendment retaliation claim asserted against eight individuals.

In response to plaintiff's second amended complaint ("SAC"), the remaining defendants in the action have filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, I recommend that defendants' motion be granted in part, but otherwise denied.

I.    BACKGROUND[1]

Between January 15, 2014, and July 7, 2015, plaintiff was an inmate entrusted to the care and custody of the OMH and was housed within the CNYPC pursuant to Article 10 of the Mental Hygiene Law. Dkt. No. 16 at 10. On September 5, 2014, plaintiff contacted "Talk of the Town," a local

---

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's SAC, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

radio show, and expressed his opinions concerning the poor operation and management of the CNYPC and the reasons for a recent uprising by patients at the facility. *Id.* at 12. On that same day, defendants Mark Cebula and Emily Gray, a Treatment Team Leader and plaintiff's primary therapist, respectively, informed plaintiff that he was being stripped of his privilege to make outgoing telephone calls. *Id.* at 12-13. Defendant Gray specifically informed plaintiff that this action was being taken as a consequence of his having called the radio station. *Id.* at 13. Plaintiff was then served by defendant Gray with a dispositional record sheet, authored by defendants Cebula and Terri Maxymillian, Director of Treatment Services at the facility, informing him that his outgoing telephone privileges were being suspended for an indefinite period of time. *Id.*

Plaintiff sent a letter, dated September 9, 2014, to defendant Jeffery Nowicki, the Chief of Mental Health Treatment Services at the CNYPC, objecting to the suspension of his privilege to place outgoing telephone calls. Dkt. No. 16 at 13. Defendant Nowicki responded on October 3, 2014, approving of the actions of defendants Maxymillian, Cebula, and Gray, and informing plaintiff that the ability to make outgoing telephone calls is a privilege, rather than a right. *Id.* at 13-14.

Plaintiff appealed that determination to defendant Maureen Bosco,

3

the Executive Director at the CNYPC, by letters dated September 5, 2014, September 16, 2014, and October 6, 2014. Dkt. No. 16 at 14. Defendant Bosco responded on October 27, 2014, approving the suspension of plaintiff's ability to make outgoing telephone calls. *Id.* at 14.

Plaintiff further appealed the telephone restriction to defendant Marie Ann Sullivan, the Commissioner of the OMH, by letter dated December 12, 2014. Dkt. No. 16 at 14. Defendant Christopher Kunkle, Director of the New York OMH, responded on behalf of defendant Sullivan, by written communications dated December 18, 2014, and December 21, 2014, advising that there were no improprieties in the actions taken against him. *Id.* at 15. In total, plaintiff was deprived of the privilege to make outgoing telephone calls for twenty-eight days. *Id.* at 13.

II.    <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on April 10, 2017. Dkt. No. 1. As was previously noted, plaintiff's original claims were wide ranging and named a considerable number of individuals as defendants. Dkt. No. 1. As a result of two orders issued by Chief District Judge Glenn T. Suddaby on June 28, 2017, and October 10, 2017, however, plaintiff's claims have been considerably narrowed. Dkt. Nos. 8, 15.

Plaintiff's SAC, his currently operative pleading, was filed on October

10, 2017. Dkt. No. 16. In his order addressing plaintiff's SAC, Chief Judge Suddaby dismissed all of plaintiff's claims with the exception of a First Amendment retaliation cause of action asserted against defendants Gray, Maxymillian, Saunders, Cebula, Nowicki, Bosco, Sullivan, and Kunkle. Dkt. No. 15 at 13.

In response to plaintiff's SAC, the remaining defendants moved, on November 10, 2017, for an order dismissing the remaining retaliation claim. Dkt. No. 28. In their motion, defendants set forth the following arguments: (1) plaintiff's SAC fails to plead sufficient facts to satisfy the adverse-action element of a retaliation claim; (2) if the underlying retaliation claim fails, so too must the supervisory claims associated with that cause of action asserted against defendants Nowicki, Bosco, Sullivan, and Kunkle; (3) in any event, plaintiff's supervisory claim against defendant Sullivan is deficient because the SAC fails to allege the requisite degree of personal involvement in the conduct giving rise to plaintiff's retaliation claim; and (4) plaintiff's damage claim asserted against defendants in their official capacities are subject to dismissal based on Eleventh Amendment immunity. Dkt. No. 28-1. In a letter dated December 23, 2017, plaintiff advised the court that he does not intend to respond to the pending motion. Dkt. No. 31. Defendants' motion, which is now ripe for

5

determination, has been referred to me for the issuance of a report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Legal Standard Governing Motions to Dismiss Pursuant to
          Rule 12(b)(6)

    A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure, calls upon a court to gauge the

facial sufficiency of that pleading using a standard that, though unexacting,

"demands more than an unadorned, the-defendant-unlawfully-harmed me

accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading

must contain a 'short and plain statement of the claim showing that the

pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ.

P. 8(a)(2)). While modest in its requirements, that rule commands that a

complaint contain more than mere legal conclusions. *See Iqbal*, 556 U.S.

at 679 ("While legal conclusions can provide the framework of a complaint,

they must be supported by factual allegations.").

    In deciding a Rule 12(b)(6) dismissal motion, the court must accept

the material facts alleged in the complaint as true and draw all inferences

in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94

("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

> B.    Analysis of Plaintiff's Retaliation Claim

> > 1.    Merits

Plaintiff's SAC alleges that, by speaking publically through the radio show "Talk of the Town" on or about September 5, 2014, regarding the conditions at the CNYPC, plaintiff engaged in constitutionally protected activity and that, as a result of his actions, defendants retaliated against him by depriving him of the ability to make outgoing telephone calls for a period of twenty-eight days. Dkt. No. 16 at 12-16.

A cognizable section 1983 retaliation claim lies when officials take adverse action against a plaintiff that is motivated by the plaintiff's exercise of a constitutional right, including the free speech provisions of the First Amendment. *See Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir.

2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). To state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that (1) the conduct in which he engaged was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.).

In this case, for purposes of their pending motion, defendants do not dispute that plaintiff's SAC satisfies the first and third elements of a retaliation claim. Dkt. No. 28-1 at 7-9. Instead, they argue that plaintiff's retaliation claim must be dismissed because there are no allegations in the SAC plausibly suggesting that the deprivation of outgoing telephone

privileges for twenty-eight days constitutes adverse action to satisfy the second element of a retaliation claim. *Id.*

For purposes of evaluating a retaliation claim, the adverse action prong requires a showing of "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights[.]" *Dawes*, 239 F.3d at 493. The determination of whether a defendant's challenged conduct constitutes adverse action is "heavily fact-specific[.]" *Hoyt v. Andreucci*, 433 F.3d 320, 328 (2d Cir. 2006). In this case, assuming the allegations in the SAC are true, and drawing all inferences in plaintiff's favor, I find that revoking a civilly confined person's outgoing telephone privileges for twenty-eight days could act as a deterrent to similarly situated persons from exercising their right to free speech as protected by the First Amendment. *See, e.g., Hoyt*, 433 F.3d at 328-29 (finding that reasonable factfinders could conclude that the defendant's revocation of the plaintiff's leave status following the plaintiff's public criticism of the defendant constituted adverse action).

The cases defendants rely on for the proposition that a temporary revocation of telephone privileges does not, on its own, constitute adverse action are inapposite. In *Garcia v. Watz*, No. 08-CV-7778, 2009 WL 2981911 (S.D.N.Y. Sept. 15, 2009), the court, in deciding the plaintiff's

10

motion for the appointment of *pro bono* counsel, noted in passing that the sanction (which had been suspended) depriving the plaintiff of telephone privileges would "doubtfully" satisfy the adverse action element. *Garcia*, 2009 WL 2981911 at *2. Not only is the procedural posture of this case materially different than in *Garcia*, but the court in *Garcia* made no determinative finding that the plaintiff's allegations were insufficient to support a retaliation claim for purposes of a motion to dismiss under Rule 12(b)(6). In *Burroughs v. Petrone*, 138 F. Supp. 3d 182 (N.D.N.Y. Oct. 15, 2015) (Hurd, J.), the court dismissed the plaintiff's retaliation claim because the complaint did not include any details concerning the alleged deprivation of telephone privileges, including when the deprivation occurred or the number of times he was denied telephone calls. *Burroughs*, 138 F. Supp. 3d at 207. Here, by contrast, plaintiff's SAC clearly describes when he lost his outgoing telephone privileges (the same day he telephoned the radio station) and the duration of his deprivation (twenty-eight days). Dkt. No. 16 at 12-13. Accordingly, to the extent defendants seek dismissal of plaintiff's retaliation claim based on the merits, I recommend that it be denied.

2.    Personal Involvement

Defendants also contend that plaintiff's SAC should be dismissed because the allegations in the pleading do not plausibly suggest the personal involvement of defendants Bosco, Kunkle, Nowicki, and Sullivan, each of whom is sued in his or her capacity as a supervisor. Dkt. No. 28-1 at 9-10.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, No. 91-CV-

12

8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994). As is true of other types of claims, this principle applies equally to causes of action claiming unlawful retaliation. *See Abascal v. Hilton*, No. 04-CV-1401, 2008 WL 268366, at *10 (N.D.N.Y. Jan. 30, 2008) (Kahn, D.J. and Lowe, M.J.).

With respect to supervisors, it is well established that they cannot be liable under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior*." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.

In this case, defendants first contend that, because the underlying

retaliation claim fails as a matter of law, defendants Bosco, Kunkle, Nowicki, and Sullivan cannot be held liable in their supervisory capacities. Dkt. No. 28-1 at 10. That argument fails, however, in light of my finding that plaintiff has sufficiently pleaded a plausible First Amendment retaliation claim.

In addition, defendants argue that, because defendant Sullivan's involvement in the matter, as alleged in the SAC, amounts to the receipt of plaintiff's letter and subsequent delegation of a response to a subordinate, she cannot be held personally liable under those circumstances. Dkt. No. 28-1 at 10. Defendants are correct. It is well settled in this circuit that supervisors cannot be held liable where the only conduct alleged against them is referring a complaint, grievance, or appeal to a subordinate. *See, e.g., Mandell v. Goord*, No. 9:06-CV-1478, 2009 WL 3123029, at *13 (N.D.N.Y. Sept. 29, 2009) (Suddaby, C.J.). Accordingly, I recommend plaintiff's retaliation claim be dismissed to the extent it is asserted against defendant Sullivan.

C.    Eleventh Amendment Immunity

It is unclear from plaintiff's complaint whether his remaining damage claim is asserted against the defendants in their official or individual capacities, or both. In their motion, defendants argue that, to the extent

14

they are sued for damages in their official capacities, that claim is subject to dismissal under the Eleventh Amendment. Dkt. No. 28-1 at 12-13.

The Eleventh Amendment protects a state against suits brought in federal court by "private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Cory v. White*, 457 U.S. 85, 90-91 (1982); *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993). This absolute immunity, which states enjoy under the Eleventh Amendment, extends to both state agencies and state officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest. *See, e.g., Daisernia v. State of N.Y.*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.) ("[A] suit which seeks a money judgment 'which must be paid from the state treasury is barred by the Eleventh Amendment,' even though it is nominally asserted against an individual official." (quoting *Edelman*, 415 U.S. at 663)); *see also Richards v. State of N.Y. App. Div., Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (*citing, inter alia, Cory v. White*, 457 U.S. 85, 89-91, (1982)). "To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity

belonging to the state." *Ying Jing Gan*, 996 F.2d at 529; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Any damage claim asserted by plaintiff in this action against the named-defendants in their official capacities is, in reality, a claim against the State of New York, and therefore is subject to dismissal. *Daisernia*, 582 F. Supp. at 798-99. Accordingly, I recommend that, to the extent that any remaining damage claim asserted in plaintiff's SAC is lodged against any of the named defendants in their official capacities, it be dismissed with prejudice.

    D.    Defendant Saunders

In its decision and order following its review of plaintiff's SAC, the court determined that the "retaliation claims against Gray, Maxymillian, Saunders, and Cebula," which had been asserted in plaintiff's first amended complaint, were "repeated and realleged in the [SAC] and thus, survive review as well." Dkt. No. 15 at 7. The court's reference to the retaliation claim asserted against defendant Saunders in plaintiff's first amended complaint purportedly stemmed from allegations that plaintiff's "telephone privileges . . . [were suspended] because he telephoned a radio show in September 2014 expressing criticism of CNYPC." Dkt. No. 8

16

at 18 (citing Dkt. No. 7 at 19-22). A careful review of plaintiff's first amended complaint, as well as his SAC, however, reveals that the allegations concerning the revocation of his telephone privileges as a result of plaintiff's call to a radio station do not involve defendant Saunders. Instead, as was discussed earlier in part I. of this report, plaintiff's SAC alleges that defendants Cebula, Gray, and Maxymillian revoked plaintiff's outgoing telephone privileges, and that defendants Nowicki, Bosco, Sullivan, and Kunkle affirmed the decision in the supervisory capacities. Dkt. No. 16 at 12-15; *see also* Dkt. No. 7 at 19-22. Because plaintiff's SAC does not implicate defendant Saunders in the decision to revoke plaintiff's telephone privileges as a result of his having telephoned the radio station, and because the court's decisions following its review of the first amended complaint and SAC pursuant to 28 U.S.C. §§ 1915(e), 1915A specifically accepted those two pleadings only to the extent they asserted retaliation claims concerning the revocation of plaintiff's telephone privileges after he called the radio station, I recommend that the retaliation claim asserted against defendant Saunders be dismissed from this action.

    In rendering the above recommendation, I am cognizant that plaintiff has not yet had an opportunity to respond to a prospective argument

concerning whether the SAC states a plausible retaliation cause of action against defendant Saunders. This is because defendants did not raise the issue in their motion papers. A court, however, is obligated under 28 U.S.C. § 1915(e)(2)(B) to dismiss a cause of action "at any time" if it determines that a pleading fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). In this case, because the court specifically accepted the SAC only with respect to the allegations concerning retaliation following plaintiff's phone call to a radio station, which did not involve defendant Saunders whatsoever, dismissal of plaintiff's retaliation claim as against that defendant is appropriate at this time. Nonetheless, in fairness to the *pro se* plaintiff, he will be afforded an opportunity to file a response to this recommendation within the fourteen-day time period that is provided for filing objections to the report. Any arguments set forth in such response will be considered by the assigned district judge when he addresses this report.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Assuming all of the facts as alleged in plaintiff's SAC are true, I conclude that the pleading asserts a plausible First Amendment retaliation claim. Accordingly, I recommend against dismissal of plaintiff's remaining claim against defendants Cebula, Gray, Maxymillian, Bosco, Kunkle, and

Nowicki. I conclude, however, that plaintiff's SAC does not sufficiently allege personal involvement on the part of defendant Sullivan, and recommend dismissal of plaintiff's claim against her. In addition, I recommend that any damage claim asserted by plaintiff against the defendants in their official capacities be dismissed.

Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss plaintiff's complaint in this action, Dkt. No. 28, be GRANTED in part, and that plaintiff's retaliation claim asserted against defendants Sullivan and Saunders, and his damage claim against the defendants in their official capacities be DISMISSED, but that defendants' motion otherwise be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[2] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

---

[2]     If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

Dated:     May 24, 2018
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

Westlaw.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

C

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Troy GARRETT, Plaintiff,
v.
Edward REYNOLDS, Superintendent, Mohawk Corr.
Facility; James A. Mance, Deputy Superintendent of
Programs; John O'Reilly,[FN1] Deputy Superintendent; J.
Burge, First Deputy; M. Maher, DSS; R. Centore,
Correctional Officer, Defendants.

> FN1. In this case, the defendants maintain and
> the docket confirms that defendant John O'Reilly
> has never been served. Service must be made
> upon a defendant within 120 days of filing the
> complaint or any claims against that defendant
> will be dismissed. See Fed.R.Civ.P. 4(m). The
> original complaint, which named O'Reilly, was
> filed on November 26, 1999, and the amended
> complaint was filed on July 13, 2001. However,
> O'Reilly was never served. Since this defendant
> has never been served, this court lacks
> jurisdiction over him, and this court recommends
> the dismissal of this defendant.

No. Civ.9:99CV2065NAMGLS.

Oct. 7, 2003.
Troy Garrett, Peekskill, NY, Plaintiff, pro se.

Hon. Eliot Spitzer, Attorney General State of New York,
Syracuse, NY, for the Defendants.

Maria Moran, Asst. Attorney General, of counsel.

REPORT-RECOMMENDATION

SHARPE, Magistrate J.
    I. Introduction [FN2]
    > FN2. This matter was referred to the undersigned
    > for a Report-Recommendation by the Hon.

Norman A. Mordue, United States District
Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and
Local Rule 72.3(c).

**\*1** Plaintiff, *pro se* Troy Garrett filed an action under
42 U.S.C. § 1983 claiming that the defendants violated his
civil rights when they retaliated against him for his
activities as an IGRC representative by subjecting him to
verbal harassment, physical abuse and subsequently, a
transfer. Garrett also claims that the supervisory
defendants failed to properly investigate his complaints
and failed to train/supervise their employees. This court
recommends denying the motion for summary judgment in
part and granting it in part.

    II. *Procedural History*

    On July 13, 2001, Garrett filed an amended complaint
against the defendants claiming that they violated his civil
rights under the First, Sixth Eighth, and Fourteenth
Amendments.[FN3] On September 28, 2001, the defendants
filed a motion for summary judgment. On January 18,
2002, this court issued an order informing Garrett of his
obligation to file a response and extended his time to
respond for thirty days. On April 24, 2002, this court
granted an additional sixty days to respond to the
defendants' motion. Despite having been given multiple
opportunities to respond, Garrett has failed to file a
response.

    > FN3. Although Garrett claims to be raising
    > violations under the Sixth, Eighth, and
    > Fourteenth Amendments, the only viable claim
    > based on this court's interpretation of the
    > complaint is under the First Amendment for
    > retaliation.

    III. *Facts* [FN4]

    > FN4. The facts are taken from the defendants'
    > statement of undisputed material facts since
    > Garrett failed to file a response.

    On June 17, 1999, Garrett filed a grievance against

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Officer Kelley for verbal harassment.[FN5] This grievance was denied by the Central Office Review Committee (CORC) on July 21, 1999. On March 19, 2000, Garrett filed a grievance claiming that defendant Burge used intimidation tactics. Defendant Reynolds investigated the grievance and it was denied based on a finding that no harassment occurred. Garrett appealed to the CORC and they denied the grievance on April 5, 2000. On April 10, 2000, defendant Centore wrote a misbehavior report against Garrett for creating a disturbance and employee harassment. On April 12, 2000, Lieutenant Manell presided over Garrett's Tier 2 disciplinary hearing and he was found guilty of both charges. He was given a 21 day recreation penalty, and loss of packages and commissary. However, his recreation penalty was suspended and deferred. Garrett appealed the determination and it was affirmed on April 19, 2000.

> FN5. Not a party in this suit.

On April 17, 2000, Garrett filed a grievance against Centore for harassment. Burge denied his grievance on May 4, 2000, and subsequently, the CORC denied it. On May 12, 2000, Garrett sent a letter to Burge concerning further harassment by Centore. On May 16, 2000, Garrett filed another grievance against Centore for harassment. His grievance was denied on May 26, 2000. After Garrett appealed, his grievance was again denied by the CORC. On June 22, 2000, the Superintendent's Office received a letter from Garrett alleging that Centore threw a piece of paper with a picture of a plunger and the words "always gets the job done" into his cell. He wrote a grievance against Centore for harassment due to the paper that he threw into his cell. Burge forwarded the grievance to the CORC on August 10, 2000. The CORC accepted the grievance on August 30, 2000, in order to investigate.

**\*2** On June 23, 2000, the Inspector General's Office interviewed Garrett at the Mohawk Correctional Facility regarding his complaints of Centore. That same day, Captain Naughton filed an administrative segregation recommendation. On June 29, 2000, an administrative segregation hearing was held. On July 14, 2000, Garrett was transferred [FN6] to the Mid-State Correctional Facility.

> FN6. The defendants suggest that Garrett has

failed to exhaust his administrative remedies concerning his transfer. They claim that he agreed to the transfer and participated in the administrative hearing which resulted in his transfer. The issue of transfer will not be addressed in this Report-Recommendation because the court has insufficient information to determine whether he exhausted his remedies.

Finally, Garrett filed a claim alleging that his property was lost or damaged on October 8, 1999. However, he was paid $75.00 for this claim and he signed a release on December 13, 1999.

### IV. *Discussion*

A. *Legal Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999). "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the ... pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexford Holdings, Inc. v. Biderman,* 21 F.3d 522, 525 (2d Cir.1994)(alternation in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999).

Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U .S. 519, 520 (1972); *see Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)(a court is to read a *pro se* party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990); *see LaFond v. General Physics Serv. Corp.,* 50 F.3d 165, 171 (2d Cir.1995).

**\*3** This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond,* 00 CIV. 3725, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001). More specifically, Local Rule 7.1(a)(3) of this court specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Local Rule 7.1(a)(3) further requires that the "non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise." The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot,* 00-CV-1178, 2002 WL 368534, at *2 (N.D.N.Y. March 1, 2002)(interalia citing *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.,* 00-CV-260, 2001 WL 237218, at *1 (N.D.N.Y. March 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty America v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id.* at 470-71.

In this case, Garrett did not file a response to the motion for summary judgment. Consequently, this court will accept the properly supported facts contained in the defendants' 7.1 Statement (*Dkt. No. 49* ) as true for purposes of this motion.[FN7] With this standard in mind, the court now turns to the sufficiency of Garrett's claims.

> FN7. The court notes that this does not apply to the various conclusions of law contained in the defendants' 7.1 Statement.

B. *Eleventh Amendment*

In Garrett's complaint, he raises claims against the defendants in their official and individual capacity. The Eleventh Amendment provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Although the Amendment does not specifically prohibit suits against a state by its own citizens, the Supreme Court has consistently applied that immunity to such cases. *See Burnette v. Carothers,* 192 F.3d 52, 57 (2d Cir.1999)(citing *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974)). Moreover, it is well established that Eleventh Amendment immunity applies not only when a state is a named defendant, but when liability must be paid from state coffers. *See New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 134 (2d Cir.1995)(citing *Edelman,* 415 U .S. at 665); *Dawkins v. State of New York,* 93-CV-1298, 1996 WL 156764, at *2 (N.D.N.Y. Mar. 28, 1996).

**\*4** In this case, Garrett raises claims against the defendants in their official and individual capacities. Since the Eleventh Amendment bars official capacity claims against these state officers, this court recommends dismissal of Garrett's claims against the defendants in their official capacity.

C. *Retaliation*

In this case, Garrett claims that during the course of his appointment as an IGRC representative, he has been subjected to repeated acts of harassment, both verbal and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

physical, threatened with physical assaults, placed into disciplinary confinement in the SHU, and transferred.[FN8] The Second Circuit has held that retaliation against a prisoner for pursuing a grievance is actionable under § 1983. *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). Moreover, the Second Circuit has recognized both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated. Thus, prisoners' claims of retaliation are examined with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10 (2d Cir.1983).

> FN8. This case turns on the interpretation of the complaint. Garret's complaint is not a model of clarity and as noted, he has failed to file a response to the motion for summary judgment. Nonetheless, a careful reading of Garrett's opening paragraph under the title "Facts" compels this court to interpret this complaint as one claiming retaliation for his activities and status as an IGRC representative.

In order for a plaintiff to prevail on a First Amendment retaliation claim, a plaintiff must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and, (3) that there was a causal connection between the protected speech and the adverse action. *See Dawes v. Walker,*[FN9] 239 F.3d 489, 492 (2d Cir.2001) (citation omitted) *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). If Garrett makes these showings, DOCS may evade liability if it demonstrates that it would have disciplined or transferred him " 'even in the absence of the protected conduct.' " *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted).

> FN9. Dawes' complaint was dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

An inmate has a constitutional right to be protected from retaliation based upon his activities as an IGRC representative. *Alnutt v. Cleary,* 913 F.Supp. 160, 170 (W.D.N.Y.1996). However, a claim brought under "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley,* 261 F.Supp 2d 113, 129

(N.D.N.Y.2003)(citing *Alnutt,* 913 F.Supp at 165-66)). Ordinarily, a claim for verbal harassment is not actionable under 42 U.S.C. § 1983. *Aziz Zarif Shabazz v. Picco,* 994 F.Supp. 460, 474 (S.D.N.Y.1998). Moreover, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz Zarif Shabazz,* 994 F.Supp. at 474.

In this case, Garrett claims that defendant Centore harassed him for his activities as an IGRC representative. Garrett also claims that he was removed as an IGRC representative when he was transferred. In addition, Garrett claims that defendants Reynolds, Mance, Burger and Maher failed to properly investigate his allegations against Centore. Garrett claims that these defendants failed to properly investigate his claims in retaliation for his activities as an IGRC representative.

**\*5** More specifically, Garrett claims that Reynolds and Mance recalled IGRC passes for one day in order to interfere with an investigation inquiry into a correctional officer's conduct involving inmates who were left in the yard during inclement weather. Finally, Garrett claims that his property was destroyed while he was in the SHU.[FN10] Garrett filed grievances against Centore in April, May, and June of 2000. One of his complaints involved Centore throwing a folded piece of paper into his cell which had a picture of a plunger with the words "always gets the job done" on it. On June 23, 2000, he was placed in administrative segregation in the SHU. Three weeks later he was transferred.[FN11]

> FN10. However, the defendants provide the court with documents which show that he was paid $75.00 in settlement of this claim.

> FN11. The defendants maintain that Garrett failed to exhaust this claim. At this juncture, it is unclear whether or not he exhausted this claim. As such, this court cannot, as a matter of law, recommend dismissal because the court has insufficient information to determine this issue.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Viewing the facts in the light most favorable to Garrett, the non-moving party, this court cannot, as a matter of law, find that Garrett fails to state a claim for which relief can be granted. He claims that he was retaliated against for his activities as an IGRC representative. As noted, verbal harassment alone will not constitute a violation of a prisoner's constitutional rights but in this case, it appears that he was transferred for his activities as an IGRC representative. The defendants rely on numerous grievances which were denied by the CORC to show that their actions were proper. They also claim that Garrett has failed to show injury, however, at this juncture of the litigation with virtually no discovery in this case, this court cannot recommend dismissal as a matter of law.

D. *Personal Involvement*

It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)(*citation omitted* ). Since there is no respondeat superior liability, the defendant must be shown to have personal involvement in the alleged deprivation of rights. *Al- Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). Supervisory officials cannot be held liable under § 1983 solely for the acts of their subordinates. *See Monell v. Department of Social Serv.,* 436 U.S. 658, 690-695 (2d Cir.1978). However, a supervisory official can be held liable for constitutional violations if he or she: (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

Garrett contends that defendants Reynolds and Mance allowed staff members under their supervision to violate his rights. More specifically, Mance refused to properly investigate Garrett's complaints. Garrett also claims that defendant Burge refused to grant his request for redress against defendant Centore. Finally, Garrett claims that the defendants collectively failed to properly train and supervise their employees.

**\*6** The defendants contend that the claims against the supervisory defendants should be dismissed for lack of personal involvement. However, this court finds this contention without merit since it appears that all of the defendants were involved in the investigation process of Garrett's complaint and he accuses all of them of continuing the alleged constitutional violation by failing to properly investigate the grievances he filed. Accordingly, this court recommends denying the defendants' motion for summary judgment based on the lack of personal involvement.

WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED, that Garrett's claims against the defendants in their official capacity under the Eleventh Amendment should be dismissed since these claims are barred; and it is further

RECOMMENDED, that defendant O'Reilly be dismissed since he was never served; and it is further

RECOMMENDED, that the defendants' motion for summary judgment be denied in all other respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2003.

Garrett v. Reynolds
Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

2009 WL 2981911
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
S.D. New York.

Alvaro R. GARCIA, Plaintiff,

v.

Harrell WATTS, et al., Defendants.

No. 08 Civ. 7778(JSR)(HP).
|
Sept. 15, 2009.

*MEMORANDUM OPINION AND ORDER*

PITMAN, United States Magistrate Judge.

**\*1** By notice of motion dated November 18, 2008
(Docket Item 5) plaintiff, who is incarcerated, moves for
*pro bono* counsel. [1] For the reasons set forth below, the
motion is denied.

The factors to be considered in ruling on a motion
for *pro bono* counsel are well settled and include "the
merits of plaintiff's case, the plaintiff's ability to pay for
private counsel, [plaintiff's] efforts to obtain a lawyer,
the availability of counsel, and the plaintiff's ability to
gather the facts and deal with the issues if unassisted by
counsel." *Cooper v. A. Sarqenti Co.,* 877 F.2d 170, 172 (2d
Cir.1986). Of these, "[t]he factor which command[s] the
most attention [is] the merits." *Id. Accord Odom v. Sielaff,*
90 Civ. 7659(DAB), 1996 WL 208203 (S.D.N.Y. April 26,
1996); *see Berry v. Kerik,* 366 F.3d 85, 88 (2d Cir.2003). As
noted fifteen years ago by the Court of Appeals:

> Courts do not perform a useful
> service if they appoint a volunteer
> lawyer to a case which a private
> lawyer would not take if it were
> brought to his or her attention.
> Nor do courts perform a socially
> justified function when they request
> the services of a volunteer lawyer for
> a meritless case that no lawyer would
> take were the plaintiff not indigent.

*Cooper v. A. Sarqenti Co., supra,* 877 F.2d at 174.
*See also Hendricks v. Couqhlin,* 114 F.3d 390, 392 (2d
Cir.1997) (" 'In deciding whether to appoint counsel ... the
district judge should first determine whether the indigent's
position seems likely to be of substance.' ").

The Court of Appeals for the Second Circuit has

> stated in various ways the applicable standard for
> assessing the merits of a pro se litigant's claim. In *Hodge
> [v. Police Officers,* 802 F.2d 58 (2d Cir.1986) ], we
> noted that "[e]ven where the claim is not frivolous,
> counsel is often unwarranted where the indigent's
> chances of success are extremely slim," and advised
> that a district judge should determine whether the pro
> se litigant's "position seems likely to be of substance,"
> or showed "some chance of success." *Hodge,* 802
> F.2d at 60–61 (internal quotation marks and citation
> omitted). In *Cooper v. A. Sarqenti Co.,* we reiterated
> the importance of requiring indigent litigants seeking
> appointed counsel "to first pass the test of likely merit."
> 877 F.2d 170, 173 (2d Cir.1989) (per curiam).

*Ferrelli v. River Manor Health Care Ctr.,* 323 F.3d 196,
204 (2d Cir.2003).

Even if I assume that plaintiff meets all the other criteria
for the appointment of counsel, I conclude that adding
plaintiff's case to the list of cases circulated to the Pro
Bono Panel is not appropriate because the remaining
claims lack sufficient merit. The alleged facts that give
rise to the present action are set forth in my Reports and
Recommendations dated April 22 and August 27, 2009,
familiarity with which is assumed. The bulk of plaintiff's
claims arise out of allegations of various forms of
mistreatment he claims to have suffered while incarcerated
at the Metropolitan Corrections Center in New York and
plaintiff asserts claims pursuant to *Bivens v. Six Unknown
Named Agents of the Federal Bureau of Narcotics,* 403
U.S. 399 (1971). For the reasons stated in the Reports
and Recommendations, I have concluded that the vast
majority of plaintiff's complaint should be dismissed for
either lack of subject matter jurisdiction or because it fails
to state claims on which relief can be granted. My April
22, 2008 Report and Recommendation was adopted by the
Honorable Jed S. Rakoff, United States District Judge, on
September 1, 2009. Judge Rakoff has not yet addressed
my August 27, 2009 Report and Recommendation. If
my August 27 Report and Recommendation is adopted,

Garcia v. Watts, Not Reported in F.Supp.2d (2009)

2009 WL 2981911

plaintiff's remaining claims would be a Due Process claim against two of the defendants and a portion of plaintiff's First Amendment retaliation claim against ten defendants. These claims, which can be fairly inferred from plaintiff's complaint but are not clearly alleged, were not addressed in defendants's dismissal motion.

**\*2** Plaintiff's Due Process claim appears to have virtually no chance of success. Plaintiff's Due Process claim arises out of a disciplinary proceeding in which plaintiff was found to have used a computer inappropriately. The sanctions resulting from the disciplinary proceeding were 90 days loss of commissary privileges, 60 days loss of telephone privileges (suspended pending 180 days of good behavior) and a change of plaintiff's cell assignment (*see* August 27, 2009 Report and Recommendation at 18 n. 7). In *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court held that the protections of the Due Process Clause were only applicable to prison disciplinary proceedings where the proceeding resulted in an atypical and significant hardship on an inmate in relation to ordinary incidents of prison life. The temporary deprivation of commissary and telephone privileges does not appear to meet this standard. *Thompson V. LaClair,* 9:08–CV–0037 (FJS/DEP), 2009 WL 2762164 at \*5 (N.D.N.Y. Aug. 25, 2009); *Smart v. Goord,* 441 F.Supp.2d 631, 640 (S.D.N.Y.2006).

The surviving aspect of plaintiff's First Amendment retaliation claim suffers from defects of similar magnitude. Read charitably, the complaint alleges retaliation resulting from plaintiff's attempt to contact an attorney regarding a grievance. However, "[t]he Second Circuit has admonished district courts to approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.' " *Bumpus v. Canfield,* 495 F. Supp .2d 316, 325 (W.D.N.Y.2007), *quoting Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). In order to state a First Amendment retaliation, a plaintiff must allege, among other things, that "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights ...." *Dawes v. Walker, supra,* 239 F.3d at 493; *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003). Given that the alleged retaliatory conduct was limited to a temporary loss of commissary and a temporary, but suspended, loss of telephone privileges, it is also doubtful that the complaint alleges facts sufficient to satisfy this element.

Accordingly, plaintiff's motion (Docket Item 5) to have his case added to the list of cases circulated to the Pro Bono Panel is denied without prejudice to renewal. Any renewed motion should address the factors identified above.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2981911

Footnotes

1    In a civil case, such as this, the Court cannot actually "appoint" counsel for a litigant. Rather, in appropriate cases, the Court submits the case to a panel of volunteer attorneys. The members of the panel consider the case, and each decides whether he or she will volunteer to represent the plaintiff. If no panel member agrees to represent the plaintiff, there is nothing more the Court can do. *See generally Mallard v. United States District Court,* 490 U.S. 296, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989). Thus, even in cases where the Court finds it is appropriate to request volunteer counsel, there is no guarantee that counsel will actually volunteer to represent plaintiff.

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

Page 1

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

**H**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Dale HENDRICKSON, Plaintiff,
v.
UNITED STATES ATTORNEY GENERAL, G.L.
Hershberger, United States Bureau of Prisons, Gary
Morgan, Pamela Ashline, Kenneth Walicki, Hulet
Keith, Otisville Medical Department, Defendants.

No. 91 CIV. 8135.
Jan. 24, 1994.

MEMORANDUM AND ORDER
McKENNA, District Judge.

**\*1** On December 4, 1991, pro se plaintiff Dale Hendrickson ("Plaintiff" or "Hendrickson"), an inmate then in confinement at the Federal Correctional Institution in Otisville, New York ("Otisville"), filed this action for injunctive relief and damages based upon alleged violations of his rights under the United States Constitution, Amendments I, IV, V, VI, IX, and XIII, and upon violations of various laws and/or regulations governing prison administration.[FN1] The Complaint named as defendants G.L. Hershberger ("Hershberger"), the United States Attorney General ("Attorney General"), Gary Morgan ("Morgan"), Pamela Ashline ("Ashline"), Kenneth Walicki ("Walicki"), Hulett Keith ("Keith"), the Bureau of Prisons ("BOP"), and the Otisville Medical Department ("OTV Medical Department") (collectively "Defendants"). Defendants moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set out below, Defendants' Rule 12(c) motion is granted.

I.

Defendants move to dismiss Plaintiff's Complaint, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. Rule 12(c) provides:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c). "[T]he same standards that are employed for dismissing a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) are applicable" to a Rule 12(c) motion to dismiss for failure to state a claim upon which relief can be granted. See Ad–Hoc Comm. of the Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College, 835 F.2d 980, 982 (2d Cir.1987); see also Viacom Int'l. Inc. v. Time, Inc., 785 F.Supp. 371, 375 n. 11 (S.D.N.Y.1992); 5A Charles Wright and Arthur R. Miller, Federal Practice and Procedure ¶ 1367, at 515–16 (1990). Thus, the Court must read the Complaint generously, drawing all reasonable inferences from the complainant's allegations. See California Motor Transp. v. Trucking Unlimited, 404 U.S. 508, 515 (1972). Moreover, "consideration is limited to the factual allegations in [the] amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." Brass v. American Film Technologies, Inc., 987 F.2d 142 (2d Cir.1993); accord Allen v. Westpoint–Pepperell, Inc., 945 F.2d 40, 44 (2d Cir.1991); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47–48 (2d Cir.1991), cert. denied, 112 S.Ct. 1561 (1992); Frazier v. General Elec. Co., 930 F.2d 1004, 1007 (2d Cir.1991). Defendants, therefore, are entitled to dismissal for failure to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

state a claim only if the Court finds beyond a doubt that "plaintiff can prove no set of facts" to support the claim that plaintiff is entitled to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

*\*2* Because the 3(g) statement and declarations submitted to this Court by Defendants have not been considered and are hereby excluded from the record, the Court renders its judgment on the pleadings pursuant to Rule 12(c).

## II.

Drawing all inferences in favor of the Plaintiff, *Miller v. Polar Molecular Corp.,* 12 F.3d 1170, 1993 WL 527434 (2d Cir.), the facts are as follows.

During Hendrickson's confinement at Otisville, certain video tapes which had been supplied to him by the government were "systematically and maliciously confiscated"; audio tapes and legal materials also were removed from Plaintiff's possession while he was a pre-trial detainee at Otisville. In retaliation for his bringing legal materials into the Otisville compound area, Plaintiff claims, he was placed in administrative detention. Compl. at 1 (presumably ¶ A.)

Hendrickson also claims at various times to have been wrongly isolated from the general prison population based on alleged and allegedly erroneous OTV Medical Department claims that he had tuberculosis. *Id.* ¶ B. During these periods of medical confinement, Hendrickson claims that the "4A unit team" denied him personal visits, his right to send mail, and telephone communications and consultations necessary to his legal representation. *Id.* ¶ C.

Hendrickson claims that as part of his medical confinement he was "subjected to ruthless and inhumane [d]isciplinary action from the D[isciplinary] H[earing] O[fficer]," and was for 15 days placed in administrative detention and for 30 days deprived of commissary, visitation, and phone privileges. *Id.* ¶ D.

Hendrickson further alleges that commissary items that he had in his possession before entering medical confinement were wrongly confiscated from him, and while in such confinement he was assaulted and searched by the "OTV Riot Squad." *Id.* ¶ E. In addition, he claims, commissary receipts, as well as legal documents and other legal materials were confiscated from him. *Id.* ¶ F.

## III.

Defendants argue that Plaintiff fails to state a claim for which relief may be granted. Of course, in considering a pro se pleading, the Court takes into consideration the special circumstances of pro se litigants. As the Second Circuit has often noted, "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988); *accord, e.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983). We apply the same solicitous standard to the instant motion to dismiss.

Plaintiff, however, has failed to present to this Court either a colorable theory of violation of legal duties or facts to support a claim that might be inferred from the pleadings. Even assuming the truth of Plaintiff's allegations, the Court is left without a cognizable claim before it.

*\*3* At the outset, the Court notes that to the extent that the Complaint seeks injunctive relief from conditions of Plaintiff's treatment while at Otisville as a pre-trial detainee, the claim is now moot as Plaintiff has since been transferred to the United States Penitentiary in Lompoc, California following his conviction at trial. Hendrickson's Complaint also fails to the extent that it seeks damages from the United States government or government officials in their official capacity. Because the United States government enjoys sovereign immunity, it can be sued only to the extent it so consents. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *U.S. v. Sherwood,* 312 U.S. 584, 586 (1941)). No such immunity has been waived in

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

suits for damages arising from constitutional violations. *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied,* 464 U.S. 864 (1983). Thus, the only possible redress remaining available to Plaintiff for the harms alleged is a *Bivens* action [FN2] against government officials in their personal capacities for actions taken under the color of governmental authority.

As Defendants point out, however, Plaintiff has nowhere, other than in the caption of the Complaint, mentioned by name any of the individual named Defendants. Defs.' Mem.Supp.Mot.Dismiss or Summ.Jt. at 2. It is true that Plaintiff did in the body of the Complaint name the "4A Unit Team," the "DHO," and the "OTV Riot Squad," but these designations of group actions undifferentiated as to individuals and of official titles unconnected to any individual names do not allege the actionable *individual* behavior necessary to sustain a *Bivens* claim.

In a *Bivens* action, where Defendants are sued in their personal capacities, actionable behavior must be alleged as to individuals. *See, e.g., Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987), *cert. denied,* 489 U.S. 1065 (1989). A complaint that fails to make any specific factual allegations of "direct and personal responsibility on the part of any of the named defendants in regard to the loss of any of [plaintiff's] property" must be dismissed. *Lee v. Carlson,* 645 F.Supp. 1430, 1436 (S.D.N.Y.1986).

More importantly, the light in which a pro se complaint may be considered does not burn so brightly as to blind the court as to the rights of defendants who are entitled to have claims against them alleged with sufficient clarity to make possible a defense. Even in a pro se complaint, claims must "specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense ..." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). Otherwise, blameless parties would be subject to damages claims for free-floating innuendo. To be sufficient before the law, a complaint

must state precisely who did what and how such behavior is actionable under law. Although the Court may make special efforts to understand the underlying claim of a vague, confusing, or poorly crafted pro se complaint that it would not undertake in connection with a claim prepared by legal counsel, it cannot do so to the extent that this would work an injustice to defendants, whose rights also must be protected. A defendant who is alleged to be liable for his actions has a right to have the claims against him spelled out with a basic degree of clarity and particularity. *See supra* at 7. Although some of the harms alleged by Plaintiff might conceivably be of some substance, the Court cannot understand from the documents before it which defendants are alleged to have participated in which allegedly actionable behavior. The Court cannot on such a basis subject a party to potential liability. *See* Defs' Mot. at 9, 10.

*Summary and Order*

**\*4** For the reasons stated, Plaintiff has failed to plead a colorable case. Defendants' motion to dismiss is granted.

FN1. The Complaint states only that "Bureau of Prison institutional Law" was violated; subsequent documents filed by Plaintiff imply the violation of specific prison policies. *See, e.g.,* Letter from Hendrickson to Judge McKenna of 10/13/93 at 2 (citing BOP Policy Statement 1315.3 purportedly concerning prisoner access to legal materials while in administrative detention).

FN2. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

S.D.N.Y.,1994.
Hendrickson v. U.S. Atty. Gen.
Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Isidro ABASCAL, Plaintiff,

v.

Bryan HILTON, Psychologist, and Mitchell Langbart, M.D., Defendants.

No. 9:04-CV-1401 (LEK/GHL).

Jan. 30, 2008.

Isidro Abascal, New York, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Richard Lombardo, Esq., Assistant Attorney General, of Counsel, Albany, NY, Counsel for Defendant Hilton.

**DECISION AND ORDER**

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on December 28, 2007, by

the Honorable George H. Lowe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of the Northern District of New York. Report-Rec. (Dkt. No. 41). After ten days from the service thereof, the Clerk has sent the entire file to the undersigned, including the objections by Plaintiff Isidro Abascal, which were filed on January 7, 2008. Objections (Dkt. No. 42).

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court has considered the objections and has undertaken a de novo review of the record and has determined that the Report-Recommendation should be approved for the reasons stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 41) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED** that Defendant Hilton's Motion to dismiss (Dkt. No. 37) is **GRANTED;** and it is further

**ORDERED,** that Plaintiff's claims against Defendant Hilton that are not the subject of Defendant Hilton's Motion to dismiss (Dkt. No. 37) are **DISMISSED** pursuant to the Court's authority to do so under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b), and/or

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

Fed.R.Civ.P. 12(h)(3), for the reasons stated above; and it is further

**ORDERED,** that Plaintiff's claims against Defendant Langbart are **DISMISSED** with prejudice for failure to serve, for the reasons stated above; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION

GEORGE H. LOWE, United States Magistrate Judge.

This action has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. Isidro Abascal ("Plaintiff"), while an inmate at Attica Correctional Facility, commenced this *pro se* civil rights action, pursuant to 42 U.S.C. § 1983, against, *inter alia,* two medical care providers employed (at the time) by the State of New York-Bryan Hilton and Mitchell Langbart. Generally, Plaintiff's Third Amended Complaint alleges, in pertinent part, that, between December 27, 2001, and October 29, 2002, while he was incarcerated at Auburn Correctional Facility, Defendants Hilton and Langbart violated his rights under the First, Eighth and Fourteenth Amendments by wrongfully treating or classifying him as mentally ill and wrongfully transferring him to the Central New York Psychiatric Center as a form of punishment and/or retaliation for writing to public officials about certain "symptoms and body scars" that Plaintiff had allegedly experienced or sustained while in the custody of DOCS. (*See generally* Dkt. No. 24 [Plf.'s Third Am. Compl.].)

**\*2** Currently pending before the Court is Defendant Hilton's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 37.) For the reasons that follow, I recommend that Defendant Hilton's motion be granted. I also recommend that those of Plaintiff's claims against Defendant Hilton that are not the subject of Defendant Hilton's motion to dismiss be *sua sponte* dismissed pursuant to the Court's authority to do so under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b), and/or Rule 12(h)(3) of the Federal Rules of Civil Procedure. Finally, I recommend that Plaintiff's claims against Defendant Langbart be *sua sponte* dismissed with prejudice for failure to serve, pursuant to Rules 4(m) and 16(f) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

### A. Relevant Procedural History

Throughout the course of this action, Plaintiff has, in his several pleadings, asserted claims against a number of individuals. All of those claims have been dismissed by Judge Kahn under Rules 8, 10 and/or 12 of the Federal Rules of Civil Procedure, except Plaintiff's claims against Defendants Hilton and Langbart.

Specifically, on January 5, 2005, Judge Kahn dismissed Plaintiff's claims, asserted in his original Complaint, against Defendants Jarkos, Tatum, Graham, Filion, Goodman, and Lape. (Dkt. No. 5, at 9.) On March 1, 2005, Judge Kahn struck Plaintiff's Amended Complaint from the docket, under Rules 8, 10 and 12 of the Federal Rules of Civil Procedure. (Dkt. No. 10.) On June 15, 2006, Judge Kahn dismissed Plaintiff's claims, asserted in his Second Amended Complaint, against

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

Defendants Muse, Smith, Pena, and "Unknown HTE Operators." (Dkt. No. 23, at 8.) On November 6, 2006, Judge Kahn dismissed Plaintiff's claims, asserted in his Third Amended Complaint, against Defendants Burge, Stone, Goord and Conway. (Dkt. No. 25, at 3.)

Remaining in the case, following Judge Kahn's Order of November 6, 2006, were Plaintiff's claims against Defendants Hilton and Langbart. (*Compare* Dkt. No. 25 [Order of 11/6/06] *with* Dkt. No. 24 [Plf.'s Third Am. Compl.].)

**B. Plaintiff's Failure to Serve Defendant Langbart**

Prior to Judge Kahn's Order of November 6, 2006, regarding Plaintiff's Third Amended Complaint, none of Plaintiff's prior pleadings had been served on Defendants Hilton or Langbart. (*See generally* Docket.) On November 6, 2006, Judge Kahn ordered, *inter alia,* that (1) "the Clerk shall issue summonses and forward them, along with copies of the [Third] Amended Complaint, to the United States Marshall for service on the [two] remaining Defendants," and (2) "Plaintiff shall ... comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action." (Dkt. No. 25, at 3-4.) On January 27, 2007, the summonses for Defendants Hilton and Langbart were returned unexecuted because Plaintiff had, on the USM-285 Forms, listed their addresses as Auburn C.F., and both had left Auburn C.F. several years before. (Dkt. No. 27.)

**\*3** On February 5, 2007, the Clerk's Office for this Court sent a letter to the Deputy Counsel for the New York State DOCS requesting his assistance in determining whether DOCS has a current address on file for Defendants Hilton and Langbart (or whether, perhaps, Defendants Hilton and Langbart would designate an agent for service of process). (Dkt. No. 28.) On March 21, 2007, the Deputy Counsel responded with Defendant Hilton's current address but stated that Defendant Langbart was

neither currently employed by DOCS nor was he previously employed by DOCS (but by the Central New York Psychiatric Center). (Dkt. No. 29.)

On March 22, 2007, the Clerk's Office reissued summonses for Defendants Hilton and Lanbart. (Dkt. No. 30.) On March 26, 2007, an acknowledgment of service was filed as to Defendant Hilton. (Dkt .33.) However, on April 26, 2007, the summons for Defendant Langbart was returned unexecuted because Plaintiff had, on the USM-285 Form, listed his address as "750 E. Adams St., Syr. N.Y. 13210," and Langbart was "no longer [t]here." (Dkt. No. 34.)

On June 28, 2007, in his motion to dismiss Plaintiff's Third Amended Complaint, Defendant Hilton stated, *inter alia,* that "[o]n April 27, 2007, the summons was returned unexecuted as to defendant Langbart." (Dkt. No. 37, Part 2, at 1, n. 1.) However, the docket contains no record of Plaintiff having completed another USM-285 Form as to Defendant Langbart. Consequently, it appears he was never served with a copy of Plaintiff's Third Amended Complaint.

Because Plaintiff has not offered "good cause" for his failure to enable the Marshals Service to effect service on Defendant Langbart, Plaintiff has violated Rule 4(m) of the Federal Rules of Civil Procedure. Alternatively, Plaintiff has violated Rule 16(f) of the Federal Rules of Civil Procedure due to the fact that he violated Judge Kahn's Order of November 6, 2006 (directing him to comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action," *see* Dkt. No. 25, at 4) by failing to complete new USM-285 Forms listing Defendant Langbart's current address.

As a result, the Court should dismiss Plaintiff's claims against Defendant Langbart. I note that the Court need not

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

issue such an order only upon motion of defense counsel but may do so *sua sponte. See* Fed. R. Civ. 4(m) ("[T]he Court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time."); Fed. R. Civ. 16(f) ("[T]he judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just....").

Remaining in the case, then, are only Plaintiff's claims against Defendant Hilton.

**C. Summary of Plaintiff's Claims Against Defendant Hilton**

In federal court, all pleadings must be liberally construed. *See* Fed.R.Civ.P. 8(e). Generally, pleadings filed by *pro se* civil rights litigants must be construed with an *extra* degree of liberality or leniency. This is because, generally, *pro se* litigants are unfamiliar with legal terminology and the litigation process, and because the civil rights claims they assert are of a very serious nature. However, "[t]here are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded [the] special solicitude" or extra leniency that is normally afforded *pro se* litigants.[FN1] Generally, the rationale for withdrawing of this extra leniency (at least in the Second Circuit) is that the *pro se* litigant's extreme litigiousness demonstrates his *experience,* the lack of which is the reason for extending extraordinary leniency to a *pro se* litigant in the first place.[FN2]

FN1. *Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *3 & n. 17 (N.D.N.Y. Sept.26, 2007) (Kahn, J., adopting Report-Recommendation) [citations omitted].

FN2. *Koehl,* 2007 WL 2846905, at *3 & n. 18

[citations omitted].

**\*4** Here, Plaintiff is certainly no stranger to the court system, having filed some 13 federal or state court actions or appeals (other than the current action).[FN3] I note that, by the time Plaintiff filed his Third Amended Complaint in this action on July 14, 2006, Plaintiff had filed some 12 federal or state court actions or appeals.[FN4] Ordinarily, I would find that the Court should withdraw from Plaintiff, or at least diminish, the extraordinary leniency normally afforded to *pro se* litigants. However, because Plaintiff, may well have been laboring under a mental illness at the time he drafted his Third Amended Complaint (for the reasons discussed below in this Report-Recommendation), I will continue to afford him special solicitude.[FN5]

FN3. **Federal Court Actions:** *Abascal-Montalvo v. I.N.S.,* 901 F.Supp. 309 (D.Kan.1995) (habeas corpus proceeding, filed by Plaintiff *pro se* ); *Abascal v. Thornburgh,* 90-CV-1399, Order of Dismissal (W.D. Okla. filed March 13, 1991) (habeas corpus proceeding, filed by Plaintiff *pro se* ).

**Federal Court Appeals:** *Abascal v. Thornburgh,* No. 91-6136, 1993 WL 118840 (10th Cir. Apr.13, 1993) (appeal from decision by W.D. Okla., in habeas corpus proceeding, filed by Plaintiff *pro se* ).

**State Court Actions:** *Abascal v. Marshall,* Index No. 000520/2007 (N.Y. Sup.Ct., Bronx County) (Walker, J.) (Article 78 proceeding, filed by Plaintiff *pro se* on 1/11/07); *Abascal v. City of New York,* Index No. 401171/2006 (N.Y. Sup.Ct., New York County) (Feinman, J.) (Article 78 proceeding, filed by Plaintiff *pro se* on 5/31/06); *Abascal v. N.Y.S. Bd. of*

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

*Parole,* Judgment of Dismissal (N.Y. Sup.Ct., Albany County, filed March 1, 2005) (Canfield, J.); *Abascal v. Maczek,* Judgment of Dismissal (N.Y. Sup.Ct., Albany County, filed Aug. 6, 2004) (Canfield, J.); *Abascal v. Roach,* Judgment of Dismissal (N.Y. Sup.Ct., Albany County, filed Fed. 14, 2004) (Teresi, J.) (dismissing Article 78 proceeding, filed by Plaintiff *pro se* ); *Abascal v. Levy,* Index No. 402959/2003 (N.Y. Sup.Ct., New York County) (Wetzel, J.) (Article 78 proceeding, filed by Plaintiff *pro se* on 9/12/03).

**State Court Appeals:** *Abascal v. Maczek,* 5 N.Y.3d 713, 806 N.Y.S.2d 164, 840 N.E.2d 133 (N.Y.2005) (denying motion for poor person relief during appeal from decision by Third Department in Article 78 proceeding, filed by Plaintiff *pro se* ); *Abascal v. N.Y.S. Bd. of Parole,* 23 A.D.3d 740, 802 N.Y.S.2d 803 (N.Y.App.Div., 3d Dept., 2005) (appeal from decision by N.Y. Sup.Ct. in Article 78 proceeding, filed by Plaintiff *pro se* ); *Abascal v. Roach,* 802 N.Y.S. 569 (N.Y.App. Div., 3d Dept ., 2005) (appeal from decision by N.Y. Sup.Ct. in Article 78 proceeding, filed by Plaintiff *pro se* ); *Abascal v. Maczek,* 19 A.D.3d 913, 796 N.Y.S.2d 757 (N.Y.App.Div., 3d Dept., 2005) (appeal from decision by N.Y. Sup.Ct. in Article 78 proceeding, filed by Plaintiff *pro se* ).

FN4. (*Id.*)

FN5. I note that Plaintiff appears to have made a material misrepresentation to the Court in his Third Amended Complaint. Specifically, in his Third Amended Complaint (which was verified), Plaintiff swore that, as of July 8, 2006 (the date of his Third Amended Complaint), the only

"lawsuit[ ] [that Plaintiff had ever filed] in any state [or] federal court relating to [his] imprisonment" was the action of *Abascal v. New York,* Index No. 107872 (N.Y. Ct. of Cl.) (Minarik, J.) (action filed on 6/12/03, and judgment entered for Plaintiff on 11/22/04). (Dkt. No. 24, ¶ 6 [Plf.'s Third Am. Compl.].) While I have not found any record of this action in the New York State Unified Court System's electronic docketing system (and I therefore have not taken it into account in assessing Plaintiff's litigation experience), I have found record of at least *seven* other actions regarding Plaintiff's imprisonment which had been filed by Plaintiff before July 8, 2006. (*See, supra,* note 3 of this Report-Recommendation.) Generally, such information is material in prisoner civil rights actions since it enables the Court to determine one or more of the following issues: (1) whether any of the issues in the action have been previously litigated and decided (for purposes of the doctrines of res judicata and collateral estoppel); (2) whether the plaintiff had, prior to being granted *in forma pauperis status* in this action, earned "three strikes" for purposes of 28 U.S.C. § 1915(g); (3) whether the plaintiff had a record of frivolous litigation sufficient to warrant either (a) what is known as a "bar order" (i.e., an order barring him from litigating further in that court without meeting certain preconditions) pursuant to 28 U.S.C. § 1651(a), or (b) an order declaring plaintiff to be a "vexatious" litigator pursuant to 28 U.S.C. § 1927; and (4) whether the plaintiff's litigation experience was so extraordinary that it effectively dispenses with the need to afford him special solicitude. While a plaintiff is under no duty to provide this information in order to state an actionable civil rights claim, here, Plaintiff chose to provide the information and swore to the truthfulness of it. Ordinarily, I would find such a material misrepresentation to be sanctionable. However, because Plaintiff may well have been laboring under a mental illness at the time he drafted his Third Amended Complaint, I will not recommend that the Court sanction him for his

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

material misrepresentation.

Construed with an *extra* degree of liberality, Plaintiff's Third Amended Complaint alleges as follows.

1. On December 27, 2001, Plaintiff was transferred from the Central New York Psychiatric Center ("CNYPC") to Auburn Correctional Facility ("Auburn C.F."), where he was interviewed by Defendant Hilton. (*Id.* at ¶ 10.) During the interview, Defendant Hilton asked Plaintiff if he wanted to live in the Intermediate Care Program ("ICP"). (*Id.*) Plaintiff responded that he neither wanted to live in ICP nor take psychotropic medication, but that he wanted to live in the prison's general population. (*Id.*)

2. At some point between December 27, 2001, and April 25, 2002, Plaintiff sent a letter to then-Governor George Pataki concerning "symptoms and body scars" that Plaintiff had experienced or sustained while in the custody of DOCS. (*Id.* at ¶ 12.) While Plaintiff does not attach a copy of this letter to his Third Amended Complaint, he does describe the substance of the letter in some detail. (*Id.* at ¶ 12.a.-12.d.) Among the symptoms described in the letter were the following: (1) the sensation that Plaintiff's "mind was being read" and that he had been subjected to the "broadcasting of [his] thoughts [by someone else]"; (2) the sensation that Plaintiff had also been subjected to "sleep deprivation," "changes to [his] hearing," "waking visions ... synced with body motions," "wild flailing of arms and legs, sometimes followed by rigor mortis," "very high body heat," "sudden, violent itching" in "hard-to-reach areas," "electrical shock[s]," "cigarette burn type scars," and "penis shriveling"; and (4) the fact that he had been "sexually provoked by female staff for many years while in the custody of the DOCS." (*Id.*)

3. Apparently, Plaintiff alleges that these symptoms and scars were caused by the "pscyho-electronic weapons" and "behavior modification experimentation" (including "personality breaking techniques") to which he has been involuntarily subjected by DOCS. (*Id.* at ¶¶ 16, 40, 41 & Ex. 8.)

4. On April 25, 2002, Defendant Hilton "interviewed" Plaintiff because of the letter he had sent to Governor Pataki. (*Id.* at ¶ 12.)

**\*5** 5. At some point before June 17, 2002, Plaintiff sent a letter to DOCS Deputy Commissioner of Corrections Lucien LeClaire, concerning the above-described "symptoms and body scars." (*Id.* at ¶ 13 .)

6. On June 17, 2002, Defendant Hilton "interviewed" Plaintiff because of the letter he had sent to Deputy Commissioner LeClaire. (*Id.*) During the meeting, Defendant Hilton asked Plaintiff if the symptoms he alleged were becoming worse, and Plaintiff responded that they were. (*Id.*)

7. At some point before July 18, 2002, Plaintiff sent a letter to the DOCS Inspector General concerning the above-described "symptoms and body scars." (*Id.* at ¶ 14.)

8. On July 18, 2002, a correctional sergeant informed Plaintiff that he could not leave his cell until he had been interviewed by a Mental Health Unit psychologist because of the letter he had written to the DOCS Inspector General, concerning the above-described "symptoms and body scars." (*Id.*)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

9. On July 19, 2002, Defendant Hilton "interviewed" Plaintiff because of the letter he had written to the DOCS Inspector General. (*Id.* at ¶ 15.) During the meeting, Plaintiff told Defendant Hilton that he just wanted to be left alone so that he could pursue his college education. (*Id.*) In addition, Plaintiff showed Defendant Hilton his "irritated face," which bore "multiple little bumps, and patches of redness." (*Id.*)

10. At some point before October 24, 2002, Plaintiff sent a letter to a New York State senator concerning the above-described "symptoms and body scars." (*Id.* at ¶ 16.)

11. On October 24, 2002, Defendant Hilton "interviewed" Plaintiff because of the letter he had written to the New York State senator. (*Id.*) During the meeting, Defendant Hilton (and Dr. Mitchell Langbart, who was also present) tried to persuade, or "coerce," Plaintiff to stop writing such letters. (*Id.*) Specifically, Dr. Langbart asked Plaintiff, "Do you want to be transferred to CNYPC and miss your college semester, or stay in the facility and be able to finish it?" (*Id.*) [FN6] Plaintiff responded that he would "do what he had to do," and that Langbart and Hilton would do "what they wanted to do." (*Id.*) Defendant Hilton responded that "all the pain and discomfort that plaintiff was suffering was maybe a revenge." (*Id.*) Subsequently, Plaintiff was placed in a "strip cell" with just his underwear and a mattress. (*Id.*)

FN6. Apparently, during the time in question, Plaintiff had already received his college degree and was pursuing an advanced degree at Cornell University. (Dkt. No. 24, Ex. 5 [Plf.'s Third Am. Compl., attaching Plaintiff's letter of 31/1/03 to James L. Stone, Commissioner of New York State Office of Mental Health]; *see also* Dkt. No. 24, Ex. 8 at 3 [attaching medical record summarizing Plaintiff's education].)

12. On October 29, 2002, Plaintiff was transferred back to CNYPC. (*Id.* at ¶ 18.) While at CNYPC, Plaintiff was told by Dr. Qamar Abassi that he had been sent to CNYPC because he had not been eating. (*Id.*) Plaintiff responded that that was false. (*Id.*)

13. On December 6, 2002, Plaintiff was again transferred from CNYPC to Auburn C.F. (*Id.* at ¶ 28.) Plaintiff alleges that, during the two months that followed the transfer, he wrote a letter to a politician concerning the above-described "symptoms and body scars," and that he was "interviewed" by "an individual from [the Mental Health Unit" because of the letter (and apparently urged not to write such letters). (*Id.* at ¶ 29.) He also alleges that, during the six months that followed the interview, he was interviewed by two other psychologists. (*Id.* at ¶¶ 37, 39.) However, he does not allege that any of these three interviews were conducted by, or even were caused by, Defendant Hilton. (*See generally id.* at ¶¶ 28-45 [not mentioning Defendant Hilton]; *see also id.* at Exs. 1-3, 5 [attaching grievances and complaint-letters not mentioning Defendant Hilton].)

**D. Summary of Arguments on Defendant Hilton's Motion to Dismiss**

*\*6* In his memorandum of law, Defendant Hilton argues that Plaintiff's claims against him, asserted in Plaintiff's Third Amended Complaint, should be dismissed for failure to state a claim for two alternative reasons: (1) Plaintiff fails to allege facts plausibly suggesting that Defendant Hilton was personally involved in any of the constitutional violations alleged by Plaintiff; and (2) even assuming as true all of the factual allegations of Plaintiff's Third Amended Complaint, Defendant Hilton is protected from liability by the doctrine of qualified immunity, as a matter of law. (Dkt. No. 37, Part 2, at 4-7.)

In his memorandum of law, Plaintiff responds to both of Defendant Hilton's arguments. With regard to Defendant Hilton's personal-involvement argument,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

Plaintiff argues that (1) Paragraphs 10, 15 and 18 of his Third Amended Complaint allege facts plausibly suggesting that Defendant Hilton "arbitrarily classified plaintiff as mentally ill," (2) Paragraphs 12, 13, 14 and 16 of his Third Amended Complaint allege facts plausibly suggesting that Defendant Hilton "persecuted him for writing to public officials," (3) Paragraph 16 of his Third Amended Complaint alleges facts plausibly suggesting that Defendant Hilton "threatened" and "coerced" him not to write to public officials, (4) Paragraphs 14 and 16 of his Third Amended Complaint allege facts plausibly suggesting that Defendant Hilton, wrongfully "secluded" him in a "strip cell," and (5) Paragraph 18 of his Third Amended Complaint allege facts plausibly suggesting that Defendant Hilton transferred Plaintiff to the Central New York Psychiatric Center for writing to a State Senator. (Dkt. No. 40, Part 1, at 3-6.)

With regard to Defendant Hilton's qualified immunity argument, Plaintiff essentially argues that Defendant Hilton fails to appreciate that it was clearly established that the First Amendment forbade Defendant Hilton from inhibiting Plaintiff from, or retaliating against him for, exercising his right to send letters of complaint to public officials about his prison conditions. (*Id.* at 6-9.)

## II. GENERAL LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[FN7] or (2) a challenge to the legal cognizability of the claim.[FN8]

FN7. *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency

of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

FN8. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ( "There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") (citation omitted); *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8 [a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") (citation omitted); *Util. Metal Research & Generac Power Sys.,*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." [FN9] The purpose of this rule is to "facilitate a proper decision on the merits." [FN10] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [FN11]

FN9. *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) (quoting *Conley,* 355 U.S. at 47); *see also Swierkiewicz,* 534 U.S. at 512 (quoting *Conley,* 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (quoting *Conley,* 355 U.S. at 47).

FN10. *See Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48).

FN11. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

*7 The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. [FN12] However, it is well established that even this liberal notice pleading standard "has its limits." [FN13] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard. [FN14]

FN12. *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

FN13. 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

FN14. *See, e.g., Bell Atlantic Corp. v. Twombly,*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 9:17-cv-00394-GTS-ML    Document 32    Filed 05/24/18    Page 42 of 68

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

---U.S. ----, ---- - ----, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." --- U.S. ----, ---- - ----, 127 S.Ct. 1955, 1968-1969, 167 L.Ed.2d 929 (2007).FN15 Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the

"plausibility" of an actionable claim. *Id.* at 1965-1974. More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.; see also Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ) [emphasis in original],

> FN15. The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

It must be remembered that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." FN16 "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se."*FN17 In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality. Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

strongest arguments that they suggest." [FN18] Moreover, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [FN19]

> FN16. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

> FN17. *Hernandez,* 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) (citations omitted); *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) (citation omitted).

> FN18. *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

> FN19. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

**\*8** Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.[FN20] Moreover, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [FN21] This is because, even when a plaintiff is proceeding

*pro se,* "all normal rules of pleading are not absolutely suspended." [FN22]

> FN20. *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at \*2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at \*5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at \*2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at \*4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at \*5, n. 18 (N.D.N.Y. Sept. 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 03-CV-0912, 2006 WL 2799417, at \*4, n.16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

> FN21. *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

> FN22. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at \*6, n. 27 (N.D.N.Y.

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

## III. ANALYSIS

## A. Whether Plaintiff Has Failed to State a First Amendment Claim

Liberally construed, Plaintiff's Third Amended Complaint asserts two related but different types of First Amendment claims against Defendant Hilton: (1) a claim that Defendant Hilton retaliated against Plaintiff for engaging in speech or activity that was protected by the First Amendment; and (2) a claim that Defendant Hilton impermissibly interfered with Plaintiff's right to petition the government for the redress of grievances. (Dkt. No. 24, ¶ 47 & Prayer for Relief, ¶ A.1.)

## 1. Retaliation for Engaging in Protected Activity

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment.[FN23] Central to such claims is the notion that, in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights.[FN24] Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.[FN25] As the Second Circuit has noted,

FN23. *See Gill v. Pidlypchak,* 389 F.3d 379, 380-81 (2d Cir.2004).

FN24. *See Gill,* 389 F.3d at 381-383.

FN25. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983).

This is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act.[FN26]

FN26. *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001)* [citations omitted], *overruled on other grounds, Swierkewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

To prevail on a First Amendment claim of retaliation under 42 U.S .C. § 1983, a plaintiff must prove by a preponderance of the evidence the following: (1) that the speech or conduct at issue was "protected"; (2) that the defendants took "adverse action" against the plaintiff-namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) that there was a causal connection between the protected speech and the adverse action-in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.[FN27] Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.[FN28]

> FN27. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Gill,* 389 F.3d at 380 (citing *Dawes v. Walker,* 239 F.3d 489, 492 [2d Cir.2001] ).

> FN28. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) [citations omitted].

**\*9** Here, Plaintiff appears to argue that the "protected" speech or conduct in which he had engaged when he was punished by Defendant Hilton consisted of sending letters to four New York State officials (Governor George Pataki, DOCS Deputy Commissioner Lucien LeClaire, the DOCS Inspector General, and a New York State senator) concerning "symptoms and body scars" that he had allegedly experienced or sustained while in the custody of DOCS. (Dkt. No. 24, ¶¶ 12-14, 16.) Although Plaintiff does not specifically allege that his letters contained complaints of mistreatment and requests for intervention, I liberally construe them as doing so. Furthermore, for the sake of argument, I will assume that

such letters constituted speech or conduct that was "protected" by the First Amendment.

The first problem with Plaintiff's retaliation claim is that, by and large, it fails to allege any facts plausibly suggesting that Defendant Hilton took any "adverse action" against Plaintiff. For example, Plaintiff alleges that, following his letters to Governor Pataki, Deputy Commissioner LeClaire, and the Inspector General, Defendant Hilton only "interviewed" Plaintiff about the subject matter of the letters. (Dkt. No. 24, ¶¶ 12, 13, 15, 16.) It is difficult for me to imagine circumstances under which an inquiry by a prison psychologist about a prisoner's complaints that his "mind was being read," and he was being subjected to "waking visions," "changes to [his] hearing," and the involuntary "flailing of [his] arms and legs" could be construed as anything other than sound medical treatment. (I certainly cannot conceive of it as being "adverse action.") I note that, in the sole detailed account of these "interviews" that Plaintiff provides in his Third Amended Complaint, he acknowledges that Defendant Hilton had asked him if the symptoms alleged in his letters were getting worse. (*Id.* at ¶ 13.)

The only "adverse action" that Plaintiff has even remotely alleges is Plaintiff's placement in a "strip cell with just his underwear and mattress" on October 24, 2002, after Defendant Langbart tried to "coerce" Plaintiff to stop writing letters like his recent letter to a New York State senator concerning his alleged "symptoms and body scars," and Plaintiff had responded that he would "do what he had to do." (*Id.* at ¶ 16.) For the sake of argument, I will assume this is "adverse action." Even it were an "adverse action," Plaintiff's retaliation claim would fail.

This is because the second problem with Plaintiff's retaliation claim is that he alleges absolutely no facts plausibly suggesting that this particular instance of "adverse action" was *causally connected* to the "protected conduct" in which Plaintiff had engaged. Plaintiff's

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

allegation that, immediately before he was placed in a "strip cell," Defendant Hilton told him that "all the pain and discomfort that plaintiff was suffering was maybe a revenge" is too cryptic and innocuous to plausibly suggest a causal link between the "protected conduct" and the "adverse action." (*Id.*) Moreover, any shred of a conceivable causal connection between Defendant Hilton's statement and Plaintiff's placement in a "strip cell" is severed when one considers the *nature* of the symptoms of which Plaintiff had complained, which included a belief that his "mind was being read," that his hearing was being manipulated, that he saw "waking visions," that he felt "violent itching" which could not be stopped, that he lacked control of his arms and legs, that he was being scarred and burned by "electrical shock[s]," and that he was being "provoked by female staff." (*Id.* at ¶ 12.) By any rational assessment, it was these symptoms, and not Defendant Hilton, that *caused* Plaintiff to be placed in a strip cell.

**\*10** Indeed, Plaintiff does not even allege sufficient facts to plausibly suggest that it was Defendant Hilton, and not Defendant Langbart, who took the "adverse action" of placing Plaintiff in the "strip cell." (*Id.* at ¶ 16.) I note that it was Defendant Langbart, not Defendant Hilton, whom Plaintiff alleges wrongfully transferred him to the CNYPC less than a week after this October 24, 2002, placement in a "strip cell." (Dkt. No. 24, ¶ 18 & Exs. 1-2.) As a result, I am persuaded that Defendant Hilton's lack-of-personal-involvement argument serves as an alternative ground for dismissing Plaintiff's retaliation claim against Defendant Hilton.[FN29]

FN29. I note that none of the paragraphs (of Plaintiff's Third Amended Complaint) cited in Plaintiff's opposition memorandum of law actually alleges facts plausibly suggesting Defendant Hilton's personal involvement in any constitutional violation. (Dkt. No. 40, Part 1, at 4.) For example, Paragraphs 10, 15 and 18 of Plaintiff's Third Amended Complaint do not allege facts plausibly suggesting either that it was

Defendant Hilton who "classified" Plaintiff as mentally ill or that such classification was "arbitrary," as Plaintiff argues in his memorandum of law. (*See* Dkt. No. 47, ¶¶ 10, 15, 18.) Nor do Paragraphs 12, 13, 14 and 16 of Plaintiff's Third Amended Complaint allege facts plausibly suggesting that Defendant Hilton "persecuted" Plaintiff for writing to public officials, as Plaintiff argues in his memorandum of law. (*See* Dkt. No. 47, ¶¶ 12-14, 16.) Nor does Paragraph 18 of Plaintiff's Third Amended Complaint allege facts plausibly suggesting that it was Defendant Hilton who caused Plaintiff to be transferred to CNYPC, as Plaintiff argues in his memorandum of law. (*See* Dkt. No. 47, ¶ 18.)

For both of these alternative reasons, I recommend that the Court dismiss Plaintiff's First Amendment retaliation claim against Defendant Hilton.

**2. Interference with Right to Petition Government**

It is well settled that inmates have a First Amendment right to "petition the Government for a redress of grievances."[FN30] This right, which is more informally referred to as a "right of access to the courts," requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights."[FN31] "However, this right is not 'an abstract, freestanding right to a law library or legal assistance' and cannot ground a Section 1983 claim without a showing of 'actual injury.' "[FN32] As a result, to state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury.[FN33] It is worth noting that "[t]his actual injury requirement 'is not satisfied by just any type of frustrated legal claim,' because the Constitution guarantees only the tools that 'inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."[FN34] " 'Impairment of any *other* litigating capacity is simply one of the incidental (and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

perfectly constitutional) consequences of conviction and incarceration.' " [FN35]

FN30. *See* U.S. CONST. amend I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").

FN31. *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), *modified on other grounds, Lewis v. Casey,* 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *see also Bourdon v. Loughren,* 386 F.2d 88, 92 (2d Cir.2004) [citations omitted].

FN32. *Collins v. Goord,* 438 F.Supp.2d 399, 415 (S.D.N.Y.2006) (quoting *Lewis v. Casey,* 518 U.S. 343, 351 [1996] ).

FN33. *Lewis,* 518 U.S. at 353; *Renelique v. Duncan,* 03-CV-1256, 2007 WL 1110913, at *9 (N.D.N.Y. Apr.12, 2007) (Strom, J.); *Howard v. Leonardo,* 845 F.Supp. 943, 946 (N.D.N.Y.1994) (Hurd, M.J.).

FN34. *Collins,* 423 F.Supp.2d at 415-16 (quoting *Lewis,* 518 U.S. at 355).

FN35. *Id.*

Here, Plaintiff has not alleged facts plausibly suggesting that Defendant Hilton acted *deliberately* and *maliciously* in interfering with Plaintiff's right to petition government officials for the redress of grievances. The closest that Plaintiff comes to doing so is when he alleges that, immediately before he was placed in a "strip cell" on October 24, 2002, Defendant Hilton told him that "all the pain and discomfort that plaintiff was suffering was maybe a revenge." (Dkt. No. 24, ¶ 16.) Again, this is too cryptic and innocuous a statement to plausibly suggest deliberate malice, especially when one considers Plaintiff's other allegations, which plausibly suggest that Defendant Hilton (who was a prison psychologist) rather promptly responded to Plaintiff's claims of experiencing delusional symptoms, at least one time with an inquiry as to whether the symptoms were getting worse. (*Id.* at ¶¶ 12, 13, 15, 16.)

**\*11** Even if Plaintiff had alleged such facts, he has not alleged facts plausibly suggesting that Plaintiff suffered any actual injury or that such actual injury was *caused* by Defendant Hilton (as opposed to being caused by someone else, such as Defendant Langbart). For example, as stated earlier, it was Defendant Langbart, not Defendant Hilton, whom Plaintiff alleges wrongfully transferred him to the CNYPC less than a week after this October 24, 2002, placement in a "strip cell." (*Id.* at ¶ 18 & Exs. 1-2.) As a result, I am persuaded that Defendant Hilton's lack-of-personal-involvement argument serves as an alternative ground for dismissing Plaintiff's interference claim against Defendant Hilton.[FN36]

FN36. As stated earlier, I note that none of the paragraphs (of Plaintiff's Third Amended Complaint) cited in Plaintiff's opposition memorandum of law actually allege facts plausibly suggesting Defendant Hilton's personal involvement in any constitutional violation. (*See, supra,* note 29 of this Report-Recommendation.)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

For both of these alternative reasons, I recommend that the Court dismiss Plaintiff's First Amendment interference claim against Defendant Hilton.

**B. Whether Plaintiff Has Failed to State an Eighth Amendment Claim**

Liberally construed, Plaintiff's Third Amended Complaint asserts two related but different types of Eighth Amendment claims against Defendant Hilton: (1) a claim that Defendant Hilton was deliberately indifferent to Plaintiff's serious medical needs (for example, by "arbitrarily classifying him as mentally ill"); and (2) a claim that Defendant Hilton subjected Plaintiff to "cruel and unusual" prison conditions by harassing him for writing to public officials, and by placing him, without justification, in a "strip cell with just his underwear and a mattress." (Dkt. No. 24, ¶¶ 16, 47 & Prayer for Relief, ¶ A.1.)

**1. Deliberate Indifference to a Serious Medical Need**

Generally, to prevail on such a claim, a plaintiff must show two things: (1) that the plaintiff had a sufficiently serious medical need; and (2) that the defendant was deliberately indifferent to that serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).

Here, the only serious medical needs that Plaintiff plausibly alleges are (1) a mental illness involving delusions and/or (2) a collection of skin irritations coupled with possible exposure to cold temperatures (due to his placement in a "strip cell" with only his underwear and a mattress for five days). (Dkt. No. 24, ¶¶ 15, 16, 47.) For the sake of argument, I will set aside the fact that Plaintiff appears to deny that he is, in fact, mentally ill. (*Id.* at ¶¶ 10, 47.) I will also assume that, taken together, these conditions constitute a *serious medical need* for purposes of the Eighth Amendment.

The problem is that Plaintiff has asserted no facts plausibly suggesting that Defendant Hilton acted with any deliberate indifference with regard to this (presumed) serious medical need. To the contrary, Plaintiff alleges facts plausibly suggesting that Defendant Hilton "interviewed" him five times regarding his mental condition, always promptly responding to Plaintiff's claims of experiencing delusional symptoms, and at least once specifically inquiring as to whether the symptoms were getting worse. (*Id.* at ¶¶ 10, 12, 13, 15, 16.) [FN37] Granted, Plaintiff also alleges that, immediately before he was placed in a "strip cell" on October 24, 2002, Defendant Hilton told him that "all the pain and discomfort that plaintiff was suffering was maybe a revenge." (*Id.* at ¶ 16.) However, this statement-in addition to being cryptic in nature-is too innocuous to plausibly suggest that Defendant Hilton possessed the state of mind necessary to be *deliberately indifferent,* which is a state of mind akin to *criminal recklessness.* [FN38] Plaintiff is not alleging facts plausibly suggesting criminal recklessness, only facts plausibly suggesting negligence or malpractice. (*See, e.g., id.* at 47 [alleging that Defendant Hilton "arbitrarily classif[ied] plaintiff as mentally ill"].) A claim of negligence or malpractice by a prison medical care provider is not actionable under 42 U.S.C. § 1983.[FN39]

FN37. I note that Plaintiff also alleges facts plausibly suggesting that, during the relevant time period (December 27, 2001, to October 29, 2002), he received medical care from other employees of Auburn C .F. (*See, e.g.,* Dkt. No. 24, ¶ 11, 16.)

FN38. *Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *accord, Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.), *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.), *Salaam v. Adams,* 03-CV-0517, 2006 WL 2827687, at *10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

FN39. *Farmer,* 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim....

Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].

**\*12** For both of these alternative reasons, I recommend that the Court dismiss Plaintiff's Eighth Amendment inadequate-medical-care claim against Defendant Hilton.

**2. Inadequate Prison Conditions**

Generally, to prevail on such a claim, a plaintiff must show two things: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious;* and (2) that the defendant acted with *deliberate indifference* to the plaintiff's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Davidson v. Murray,* 371 F.Supp.2d 361, 370 (W.D.N.Y.2005).

Here, the only serious conditions of confinement that Plaintiff plausibly alleges are (1) repeated "interviews" by Defendant Hilton (regarding Plaintiff's complaints of the symptoms described above in Part I.C. of this Report-Recommendation), which conceivably caused Plaintiff to experience anxiety or pressure, and/or (2) incarceration in a "strip cell" for five days (with only his underwear and a mattress) when Plaintiff was suffering from a skin irritation and presumably a mental illness. (Dkt. No. 24, ¶¶ 15, 16, 18, 47.) I have some difficulty concluding that these conditions of confinement, even taken together, are *sufficiently serious* for purposes of the Eighth Amendment. *See Lock v. Clark,* 90-CV-0327, 1992 U.S. Dist. LEXIS 21991, at *1, 11-12, 1992 WL 559660 (N.D.Ind. March 17, 1992) ("The deprivations alleged by Mr. Lock in this case [which consisted of being confined

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

for seven days in a "strip cell" in a segregation unit] fail to satisfy the objective component of his Eighth Amendment conditions claim, and they do not rise to the level of a constitutional violation."); *Dunkley v. Tate,* 07-CV-0465, 2007 U.S. Dist. LEXIS 73166, at *2-4, 2007 WL 2900169 (W.D.Va. Oct. 1, 2007) (confinement in "strip cell" for three days did not violate Eighth Amendment as a matter of law).[FN40] For example, Plaintiff does not allege that, while in the "strip cell" for five days, he was deprived of "the minimal civilized measure of life's necessities," *Farmer,* 511 U.S. at 834, such as medical care, food, water, warmth or a toilet.

> FN40. *See also Lewis v. Angelone,* 00-CV-0161, 2001 U.S. Dist. LEXIS 25539, at *12 (E.D.Va. May 16, 2001) ("Lewis has failed to allege facts which suggest his [24-hour] confinement in the strip cell and his confinement in segregation were sufficiently severe and prolonged as to give rise to an Eighth Amendment claim.") [citation omitted]; *Winn v. Delaware Dept. of Corr.,* 02-CV-0034, 2003 U.S. Dist. LEXIS 18678, at *11, 2003 WL 21456628 (D.Del. Sept. 30, 2003) ("Plaintiff has not presented any facts proving that State Defendants' placing him on strip cell status involves the wanton and unnecessary infliction of pain [sufficient to establish an Eighth Amendment claim.").

Moreover, I note that, in this cruel-and-unusual *punishment* claim, Plaintiff has alleged facts plausibly suggesting that he was placed in a strip cell not as *punishment* but for non-punitive reasons such as (1) to protect his own safety,[FN41] (2) to protect other prisoners' safety,[FN42] (3) to protect prison employees' safety,[FN43] and/or (4) to await a transfer to CNYPC.[FN44]

> FN41. (Dkt. No. 24, ¶¶ 7, 9, 12 [alleging that he was physically assaulted by other inmates on November 23, 2001, and December 24, 2001,

and that, *inter alia,* he felt "violent itching" which could not be stopped, and he lacked control of his arms and legs].)

> FN42. (*Id.* at ¶ 7 [alleging that, on November 23, 2001, Plaintiff got in a fight with another inmate].)

> FN43. (*Id.* at ¶¶ 12, 40, 42 [alleging that the symptoms he experienced included a belief that his "mind was being read" by DOCS, that his hearing was being manipulated by DOCS, that he was being scarred and burned by "electrical shock[s]" administered by DOCS, and that he was being "sexually provoked by female staff."].)

> FN44. (*Id.* at ¶¶ 16, 18 [alleging that, five days after Plaintiff was placed in a "strip cell," he was transferred to CNYPC].)

However, even if one were to assume that, taken together, the conditions of confinement alleged by Plaintiff are *sufficiently serious* for purposes of the Eighth Amendment, Plaintiff's inadequate-prison-condition claim would fail. This is because, again, Plaintiff has asserted no facts plausibly suggesting that Defendant Hilton acted with any deliberate indifference to Plaintiff's health or safety. (*See, supra,* Part III.B.1. of this Report-Recommendation.) Indeed, the allegations of Plaintiff's Third Amended Complaint plausibly suggest that Defendant Hilton acted with due regard to Plaintiff's health or safety. (*Id.*) I note that the "symptoms" of which Plaintiff repeatedly complained to public officials included a belief that his "mind was being read," that he saw "waking visions," that he felt "violent itching" which could not be stopped, that he lacked control of his arms and legs, that he was being scarred and burned by

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

"electrical shock[s]," and that he was being "provoked by female staff." (*Id.* at ¶ 12.) Simply stated, Plaintiff's allegations plausibly suggested that he was a danger to himself (and others) and in need of "interviews" conducted by Defendant Hilton, and placement in a "strip cell" for five days pending a transfer to the CNYPC, where he could receive further evaluation and appropriate treatment.

**\*13** For this reason, I recommend that the Court dismiss Plaintiff's Eighth Amendment prison-conditions claim against Defendant Hilton.

**C. Whether Plaintiff Has Failed to State a Fourteenth Amendment Claim**

Liberally construed, Plaintiff's Third Amended Complaint asserts two different Fourteenth Amendment claims against Defendant Hilton: (1) a claim that Defendant Hilton violated Plaintiff's substantive due process and/or procedural due process rights; and (2) a claim that Defendant deprived Plaintiff of equal protection under the laws. (Dkt. No. 24, ¶ 47 & Prayer for Relief, ¶ A.1.)

**1. Due Process**

The Due Process Clause of the Fourteenth Amendment contains both a substantive component and a procedural component. *Zinernon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinernon,* 494 U.S. at 125 [internal quotations marks and citation omitted]. The procedural component bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property ... *without due process of law.*" *Id.* at 125-126 [internal quotations marks and citations omitted; emphasis in original]. One of the differences between the two claims is that a substantive due process violation "is

complete when the wrongful action is taken," while a procedural due process violation "is not complete unless and until the State fails to provide due process" (which may occur *after* the wrongful action in question). *Id.*

**a. Substantive Due Process**

"Substantive due process protects individuals against government action that is arbitrary, ... conscience-shocking, ... or oppressive in a constitutional sense, ... but not against constitutional action that is incorrect or ill-advised." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) [internal quotations marks and citations omitted], *aff'g,* 91-CV-1196, *Memorandum-Decision and Order* (N.D.N.Y. Jan. 26, 1993) (DiBianco, M.J.) (granting summary judgment to defendants in inmate's civil rights action).

The first step in a substantive due process analysis is to identify the constitutional right at stake. Plaintiff does not indicate what right he is claiming. For the sake of argument, I will assume that Plaintiff possessed a protected liberty interest in remaining free from confinement in a strip cell and/or transfer to CNYPC unless DOCS has obtained reasonable grounds to believe that he was suffering from a mental illness involving delusions to such an extent that he poses a threat to himself or others in the correctional facility.[FN45]

FN45. I note that I do *not* liberally construe Plaintiff's Third Amended Complaint as alleging that he was forcibly injected with anti-psychotic medications (or that he possessed a protected liberally interest in being free from such forcible injections)-a constitutional claim that I understand he tried to assert in his original Complaint. (*See* Dkt. No. 5, at 5-6 [Order of Judge Kahn, referring to this attempted claim].) The closest Plaintiff comes to making this claim is when he alleges that, on December 27, 2001, he told Defendant Hilton that he did not want to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

"take any psychotrophic medication." (Dkt. No. 24, ¶ 10.) Notably missing is any allegation that he was subsequently forced (by Defendant Hilton or anyone) to take any such medication.

The next step in a substantive due process analysis is to consider whether the state action was arbitrary in the constitutional sense and therefore violative of substantive due process. Here, I find that Plaintiff has alleged no facts plausibly suggesting that the state action was arbitrary in the constitutional sense and therefore violative of substantive due process. Indeed, Plaintiff has alleged facts plausibly suggesting that, far from being arbitrary, the actions of Defendant Hilton were reasonable and appropriate. In addition to the litany of delusional symptoms acknowledged by Plaintiff (described above), I note that, when "interviewed" about them, Plaintiff steadfastly persisted in his beliefs,[FN46] and refused treatment.[FN47]

FN46. (Dkt. No. 24, ¶¶ 13, 15, 16.)

FN47. (*Id.* at ¶¶ 10, 15 & Exs. 8-9.)

**\*14** As a result, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment substantive due process claim against Defendant Hilton.

**b. Procedural Due Process**

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient...." *Kentucky Dept. of Corr. v. Thompson,* 490

U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

Here, I find that the Due Process Clause does not give Plaintiff a liberty interest in remaining free from confinement to a "strip cell," given the duration and conditions of that confinement, as alleged by Plaintiff (described above). *See Dunkley v. Tate,* 07-CV-0465, 2007 U.S. Dist. LEXIS 73166, at \*2-4, 2007 WL 2900169 (W.D.Va. Oct. 1, 2007) ("In this case, while the conditions of Dunkley's confinement in the strip-cell [for three days] were more restrictive than those applied to inmates in the general population and possibly even segregation, they were not nearly so restrictive and atypical as those at issue in *Wilkinson [v. Austin,* 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) ]. Therefore, the court finds that Dunkley did not have a liberty interest in remaining out of the strip-cell and, thus, his due process claim fails.").[FN48]

FN48. *See also Winn v. Delaware Dept. of Corr.,* 02-CV-0034, 2003 U.S. Dist. LEXIS 18678, at \*8, 14, 2003 WL 21456628 (D.Del. Sept. 30, 2003) ("Because plaintiff does not have a constitutionally protected liberty interest at issue, plaintiff's claims [arising from his placement in a 'strip cell' apparently several times for periods of 24 hours] will be dismissed.").

Even if I were to find that Plaintiff possessed a limited such liberty interest, I would find that Plaintiff was, according to his own allegations, given all the process to which he was due under the circumstances. For example, I note that Plaintiff's placement in a "strip cell," and transfer to the CNYPC, was immediately proceeded by not only three "interviews" with a psychologist about claims of delusional symptoms but a fourth "interview" with both a psychologist *and* a psychiatrist. (Dkt. No. 24, ¶¶ 12, 13, 15, 16.) This last "interview," conducted by two doctors, is reminiscent of the examination conducted by two physicians, under the New York State law, prior to a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

patient's involuntary commitment to a psychiatric hospital. *See* N.Y. Correction Law § 402(1); N.Y. Mental Hygiene Law ¶ 9.27(a). Furthermore, here, Plaintiff was not even involuntarily *committed* to a psychiatric hospital, only temporarily *transferred* to one (where he previously had been committed) on an emergency basis (for "closer observation" and "diagnostic clarification" as stated in one medical record).[FN49]

FN49. (Dkt. No. 24, ¶¶ 8, 10, 18 & Ex. 9.)

As a result, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Hilton.

**2. Equal Protection**

To prove a violation of the Equal Protection Clause, a plaintiff must demonstrate that he was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *Travis v. N.Y. State Div. of Parole,* 96-CV-0759, 1998 U.S. Dist. LEXIS 23417, at *11, 1998 WL 34002605 (N.D.N.Y. Aug. 26, 1998) (Sharpe, M.J.), *adopted,* 96-CV-0759, Decision and Order (N.D.N.Y. filed Nov. 2, 1998) (McAvoy, C.J.). Where the alleged classification involves a "suspect class" or "quasi-suspect class," the alleged classification is subject to "strict scrutiny" by a court. *Travis,* 1998 U.S. Dist. LEXIS 23417, at *11, 1998 WL 34002605. However, neither prisoners nor the mentally ill comprise a suspect or quasi-suspect class for Equal Protection purposes. *See Holley v. Carey,* 04-CV-2708, 2007 U.S. Dist. LEXIS 64699, *23, 2007 WL 2533926 (E.D.Cal. Aug. 31, 2007) ("[N]either prisoners nor persons with mental handicaps are a suspect class entitled to heightened scrutiny.") [citations omitted]; *Coleman v. Martin,* 04-CV-72534, 363 F.Supp.2d 894, 902 (E.D.Mich.2005). As a result, the alleged classification is subject to only "rational basis scrutiny." *Holley,* 2007 U.S. Dist. LEXIS 64699, at *23, 2007 WL 2533926; *Coleman,* 363 F.Supp.2d at 902. To

survive such scrutiny, the alleged classification need only be "rationally related" to a "legitimate state interest." *Holley,* 2007 U.S. Dist. LEXIS 64699, at *23, 2007 WL 2533926; *Coleman,* 363 F.Supp.2d at 902.

**\*15** Here, Plaintiff has not even alleged facts plausibly suggesting there has been any *classification* at all in this case, i.e., that he was treated differently from anyone else. In any event, he has not alleged any facts plausibly suggesting that the "discrimination" he allegedly experienced was not rationally related to a legitimate state interest, namely, the preservation of safety and order in its prisons, and the diagnosis and treatment of mentally ill prisoners.

As a result, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment equal protection claim against Defendant Hilton.

**D. Defendant Hilton's Qualified Immunity Argument**

Because I have already concluded that adequate grounds exist upon which to base a recommendation of dismissal of Plaintiff's claims against Defendant Hilton, I need not, and do not, reach the merits of Defendant Hilton's alternative argument in favor of dismissal, namely, his qualified immunity argument.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendant Hilton's motion to dismiss (Dkt. No. 37) be ***GRANTED;*** and it is further

**RECOMMENDED** that those of Plaintiff's claims

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

(Cite as: 2008 WL 268366 (N.D.N.Y.))

against Defendant Hilton that are not the subject of Defendant Hilton's motion to dismiss (Dkt. No. 37) be **DISMISSED** pursuant to the Court's authority to do so under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b), and/or Fed.R.Civ.P. 12(h)(3), for the reasons stated above; and it is further

**RECOMMENDED** that Plaintiff's claims against Defendant Langbart be **DISMISSED** with prejudice for failure to serve, for the reasons stated above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2008.

Abascal v. Hilton

Not Reported in F.Supp.2d, 2008 WL 268366 (N.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by Cortright v. Belloma, W.D.N.Y., July 22, 2016

2009 WL 3123029
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Eric MANDELL, Plaintiff,
v.
Glenn S. GOORD, William Lape; Lieutenant
Whitmore; Corrections Officer Dzwonkas;
Corrections Officer Hall; Corrections Officer
Anna; and Sergeant R. Hawes, Defendants.

No. 9:06–CV–1478 (GTS/DEP).
|
Sept. 29, 2009.

West KeySummary

1    **Constitutional Law**
       Segregation
     **Prisons**
       Punitive, Disciplinary, or Administrative
       Confinement
     **Prisons**
       Particular Issues and Applications

A prisoner's procedural due process rights
were not violated during a disciplinary
proceeding that resulted in his confinement
in a special housing unit. Although the
disciplinary conviction was subsequently
reversed on appeal after the prisoner
served 69 days of his sentence, the
prisoner failed to demonstrate that he
experienced an atypical and significant
hardship that implicated a protected liberty
interest. The prisoner also received all of
the constitutionally mandated due process
requirements during the disciplinary hearing.
U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**Attorneys and Law Firms**

Eric Mandell, New York, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the
State of New York, Timothy P. Mulvey, Esq., Assistant
Attorney General, of Counsel, Syracuse, NY, for
Defendants.

Andrew M. Cuomo, Attorney General of the State of
New York, Timothy P. Mulvey, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

*DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court in this *pro se* prisoner
civil rights action are (1) Defendants' motion for summary
judgment (Dkt. No. 43), and (2) United States Magistrate
Judge David E. Peebles's Report–Recommendation
recommending that Defendants' motion for summary
judgment be granted in part and denied in part (Dkt. No.
44). Neither party filed any Objections to the Report–
Recommendation. For the reasons set forth below, the
Report–Recommendation is accepted and adopted in its
entirety, and Defendants' motion is granted in part and
denied in part.

**I. BACKGROUND**

Plaintiff filed his Complaint in this action on December
11, 2006. (Dkt. No. 1.) Having originally named the
corrections officers involved as "John Doe" Defendants,
on June 4, 2007, Plaintiff was permitted to amend his
Complaint to name Defendants, who are now identified
as Lieutenant Whitmore, Sergeant R. Hawes, Corrections
Officers Dzwonkas, Hall and Anna, Commissioner
Goord, and Marcy Superintendent Lape (all of whom
are sued in their individual and official capacities). (Dkt.
No. 14.) Generally, in his Amended Complaint, Plaintiff
alleges that Defendants violated his constitutional rights
under the First, Eighth, and Fourteenth Amendments to
the United States Constitution by (1) subjecting him to
excessive use of force, (2) denying him medical treatment
for the serious injuries sustained as result of the assault,
(3) denying him due process at a disciplinary proceeding,
(4) retaliating against him for pursuing an appeal of his
grievance, and (5) conspiring to retaliate against him and
cover up their unconstitutional conduct. (Dkt. No. 15.) In

addition, Plaintiff advances pendent state law claims for assault and battery. (*Id.*)

On November 12, 2008, Defendants filed a motion for summary judgment, arguing that they are entitled to summary judgment because, among other things, Plaintiff failed to exhaust his administrative remedies. (Dkt. No. 43.) On January 27, 2009, the deadline for Plaintiff's submission of papers in opposition to Defendants' motion passed without Plaintiff filing any responsive papers.

On September 1, 2009, Magistrate Peebles issued a Report–Recommendation recommending that Defendants' motions be granted in part and denied in part. (Dkt. No. 44.) More specifically, Magistrate Judge Peebles recommended as follows: (1) that Plaintiff's claims against Defendants Goord and Lape be dismissed for lack of personal involvement; (2) that Plaintiff's Fourteenth Amendment due process claim "be dismissed on the grounds that he has failed to make a threshold showing that an actual liberty interest was implicated by his sixty-nine days of confinement in the facility [Special Housing Unit], and further because, even presuming the deprivation of such a liberty interest, the record establishes that [P]laintiff was afforded all of the process to which he was constitutionally entitled"; and (3) that "[P]laintiff's claims for excessive use of force, denial of medical treatment, retaliation and conspiracy be left intact despite his failure to exhaust his administrative remedies, inasmuch as material questions of fact exist as to whether the alleged threats against him by corrections officers effectively rendered those remedies unavailable and/or should estop [D]efendants from relying on such defense." (Dkt. No. 44.)

**\*2** Further familiarity with the grounds of Magistrate Judge Peebles's Report–Recommendation is assumed in this Decision and Order.

## II. APPLICABLE LEGAL STANDARDS

### A. Legal Standard Governing Motion for Summary Judgment

Magistrate Judge Peebles correctly recited the legal standard governing a motion for summary judgment, including the standard governing such motions that are not properly opposed by *pro se* litigants. (Dkt. No. 159, at 13–14.) As a result, that standard is incorporated by reference herein.

### B. Standard of Review

When specific objections are made to a magistrate judge's report-recommendation, the Court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C). [1] When only general objections are made to a magistrate judge's report-recommendation, the Court reviews the report-recommendation for clear error or manifest injustice. *See Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999). [2] Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted]. After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

## III. ANALYSIS

After carefully reviewing all of the papers in this action, including Magistrate Judge Peebles's thorough Report–Recommendation, the Court concludes that the Report–Recommendation is not clearly erroneous. Magistrate Judge Peebles employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report–Recommendation for the reasons stated therein.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Peebles's Report–Recommendation (Dkt. No. 44) is *ACCEPTED* and *ADOPTED* in its entirety; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 43) is *GRANTED* in part and *DENIED* in part; and it is further

**ORDERED** that Plaintiff's claims against Defendants Goord and Lape are *DISMISSED;* Plaintiff's Fourteenth

Amendment claim is **DISMISSED;** and Defendants'
motion is otherwise **DENIED .**

### REPORT AND RECOMMENDATION

[DAVID E. PEEBLES](), United States Magistrate Judge.

Plaintiff Eric Mandell, a former New York State prison
inmate who is proceeding *pro se* and *in forma pauperis*,
has commenced this action pursuant to [42 U.S.C. § 1983]()
alleging deprivation of his civil rights arising out of his
incarceration, additionally asserting pendent state law
claims for assault and battery. [1] In complaint the
plaintiff asserts that he was denied due process during
the course of a hearing to address disciplinary charges
against him, and that the defendants retaliated against him
for appealing the resulting disciplinary determination by
brutally beating him, denying him medical treatment, and
threatening that if he reported the assault he would be
beaten again, even more severely. As relief, the plaintiff
seeks a declaratory judgment that his constitutional rights
were violated, an injunction prohibiting the defendants
from further retaliating against him, and compensatory
and punitive damages.

**\*3** Currently pending before the court is the defendants'
motion for summary judgment dismissing the claims
against them. In their motion the defendants argue
that 1) the plaintiff's amended complaint is subject to
dismissal in its entirety based upon his failure to exhaust
all of his administrative remedies before filing suit; 2)
plaintiff's claims against the defendants Glenn S. Goord,
the Commissioner of the New York State Department
of Correctional Services ("DOCS"), William Lape, the
superintendent of the facility at which the relevant
conduct occurred, and Mr. Whitmore, a lieutenant at the
facility, should be dismissed for lack of their personal
involvement in the offending conduct; and 3) the claim
for violation of his right to procedural due process during
the disciplinary proceeding should be dismissed on the
merits, since the plaintiff was not deprived of a cognizable
liberty interest, and in any event he was afforded the
constitutionally mandated minimal due process. For the
reasons set forth below, I recommend that the defendants'
motion be granted in part, and that the plaintiff's claims
against Goord and Lape as well as his due process cause
of action be dismissed, but that the defendants' motion
otherwise be denied based upon the existence of triable

issues of fact as to whether administrative remedies were
available to the plaintiff, and/or whether the defendants
should be estopped from raising an exhaustion defense, as
well as surrounding defendant Whitmore's involvement in
the violations alleged.

### I. *BACKGROUND* [2]

Prior to his release, the plaintiff was a prison inmate
entrusted to the care and custody of the DOCS; at the
time of the incidents giving rise to the plaintiff's complaint,
Mandell was designated to the Marcy Correctional
Facility ("Marcy"), located in Marcy, New York. Amended
Complaint (Dkt. No. 15) ¶ 3.

The circumstances giving rise to the plaintiff's claims were
set in motion when, on May 19, 2006, he was required
to submit to a urine test and thereafter, based upon a
positive test result, was served with a misbehavior report
charging him with drug use in violation of prison rules.
*Id.* ¶¶ 11–12. A disciplinary hearing was subsequently
conducted over a period of several days, beginning on
June 1, 2006, with Corrections Captain Brown acting
as the hearing officer. *Id.* ¶ 13 and Exh. 1. During the
hearing Mandell denied the charge, alleging that the urine
test upon which it was predicated was unreliable and
resulted in a false positive. [3] *Id.* ¶ 13. On June 6, 2006,
following the disciplinary hearing, Mandell was found
guilty of violating prison rules prohibiting drug use and
was sentenced to ninety days of disciplinary confinement
in a special housing unit ("SHU") with a corresponding
loss of package, commissary and telephone privileges and
a recommended loss of three months of good time credit. [4]
Amended Complaint (Dkt. No. 15) ¶ 14. At the time of the
decision Mandell was informed that the papers necessary
for appealing that determination would be mailed to him.
*Id.*

**\*4** While in the SHU, because he had not received the
appeal papers, on June 11, 2006 the plaintiff asked the
officer on duty, defendant Dzwonkas, if forms were
available in SHU, and was told that they were not. *Id.*
¶ 16. Mandell then asked if he could see a sergeant about
securing the necessary papers. *Id.* Dzwonkas disappeared,
returning several hours later with two other officers,
defendants Hall and Anna. *Id.* ¶ 17. Apparently agitated
because Mandell had requested appeal papers, the officers
directed the plaintiff to face and place his hands on the
wall, spread eagle, entered the plaintiff's cell and began

yelling obscenities, and beat him, breaking his leg in two locations and causing several other bruises and abrasions. *Id.* ¶¶ 18–21. The plaintiff did not resist or threaten the officers during the attack, but instead attempted to convince them that he had not meant any disrespect by asking to see a sergeant regarding his appeal. *Id.* ¶¶ 19, 22. As the officers were leaving his cell the plaintiff could hear them laughing, calling him a baby, and threatening that if he reported the incident they would break his neck the next time. *Id* . ¶ 24.

After having been left for several hours on the floor of his cell, in pain, the plaintiff was finally able to convince prison officials to provide him with medical attention for his injuries. Amended Complaint (Dkt. No. 15) ¶¶ 24–26. As he was leaving the SHU for that purpose, the plaintiff was told by defendant Whitmore that he did not care what story Mandell told but warned that it would be in his best interest not to tell anyone at the clinic that the defendants were responsible for his injuries. *Id.* ¶ 28. Fearing retribution the plaintiff acquiesced, and at the clinic he reported to the examining nurse that he had twisted his ankle while trying to use the bathroom. *Id.* ¶ 29. While the nurse examined the plaintiff, she informed him that there was nothing wrong with his leg and did not order X-rays; she sent him back to the SHU with some ibuprofen and an ankle brace. *Id.* ¶ 29.

The following day Mandell was unable to get out of his bed, and as a result was taken to emergency sick call. Amended Complaint (Dkt. No. 15) ¶ 30. At the entrance to the SHU the plaintiff was again confronted by a corrections officer, this time defendant Hawes, who warned him to adhere to his story if he wanted the rest of his stay at Marcy to be "pleasant." *Id.* ¶ 31.

The plaintiff was eventually seen by a facility doctor and x-rayed, and on June 20, 2006 he was informed that he had sustained a broken ankle and fibula. Amended Complaint (Dkt. No. 15) ¶ 33. Mandell underwent corrective surgery on June 29, 2006 at an outside medical center, and thereafter was returned to Marcy. *Id.* ¶ 34.

The disciplinary decision finding the plaintiff guilty of drug use was ultimately overturned on appeal by Donald Selsky, the DOCS Director of Special Housing/Inmate Disciplinary Program, on August 7, 2006, and the charges were ordered expunged from Mandell's records. Amended Complaint (Dkt. No. 15) ¶ 35 and Exh. 1. Based upon

that determination, the plaintiff was released from SHU confinement, and on August 14, 2006 was transferred into the hospital unit at the nearby Oneida Correctional Facility ("Oneida"). *Id.* at ¶ 36.

 **\*5** The plaintiff maintained his false rendition of the June 11, 2006 incident until his transfer into Oneida; once there, however, he accurately recounted to a nurse the events that led to his broken leg. Amended Complaint (Dkt. No. 15) ¶ 37. The nurse, in turn, reported the incident to a sergeant, who contacted the internal investigation unit of the DOCS. *Id.* Sometime in September of 2006, a representative from the DOCS internal investigation unit interviewed the plaintiff, who reported the attack and informed the investigator about the threats, adding that because he feared for his life and safety he had not previously told anyone what actually occurred. *Id.* ¶ 39.

The plaintiff filed a grievance on September 12, 2006 with defendant William Lape, the superintendent at Marcy, as well as with the Inmate Grievance Program ("IGP") at Oneida, complaining of the June 11, 2006 beating, the failure of prison officials to provide medical care, and the threats made against him. Amended Complaint (Dkt. No. 15) ¶ 38 and Exh. 2. That grievance detailed the beating, and also explained that in light of threats of further beatings the plaintiff never informed anyone what had really happened until his transfer into Oneida. Amended Complaint (Dkt. No. 15) Exh. 2. Mandell's grievance was denied as untimely on September 18, 2006, and all documents associated with the matter were returned to him. Amended Complaint (Dkt. No. 15) ¶ 40 and Exh. 3.

The following day, the plaintiff wrote a letter attempting to appeal the denial of his grievance to the defendants Goord and Lape, as well as to the superintendent at Oneida. Amended Complaint (Dkt. No. 15) Exh. 4. In response, he received a letter from the office of then-acting Commissioner of the DOCS, Lucien J. Leclaire, Jr., encouraging Mandell to follow procedures outlined in the DOCS regulations regarding the established grievance process, and advising, among other things, that he should provide the facility IGP supervisor with mitigating circumstances justifying his failure to timely file the grievance. Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 43–11) ¶ 6–7;[5] *see also* Amended Complaint (Dkt. No. 15) Exh. 5. Instead, without following that directive, the plaintiff commenced this action. Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 43–11) ¶ 8.

## II. *PROCEDURAL HISTORY*

The plaintiff commenced this action on December 11, 2006, and was thereafter granted leave to proceed *in forma pauperis.* Dkt. Nos. 1, 4. Having originally named the corrections officers involved as "John Doe" defendants, the plaintiff was subsequently permitted to amend his complaint on June 4, 2007 to name the defendants, who are now identified as Lieutenant Whitmore, Sergeant R. Hawes, Corrections Officers Dzwonkas, Hall and Anna, Commissioner Goord, and Marcy Superintendent Lape, all of whom are sued in their individual and official capacities. Dkt. No. 14. The plaintiff's amended complaint alleges violations of the First, Eighth, and Fourteenth Amendments to the United States Constitution, as well as pendent state law claims for assault and battery, asserting that he was 1) subjected to excessive use of force; 2) denied medical treatment for the serious injuries sustained as result thereof; 3) denied due process in the disciplinary proceedings; and 4) retaliated against for pursuing an appeal of his grievance; and further that 5) the defendants conspired to retaliate against him and cover up their unconstitutional conduct. Dkt. No. 15.

**\*6** Following joinder of issue and the close of discovery, on November 12, 2008 the defendants filed the pending motion for summary judgment seeking dismissal of the plaintiff's amended complaint. Dkt. No. 43. Despite the fact that the deadline for the plaintiff's submission of papers in opposition to the defendants' motion has long since passed, the plaintiff has filed no responsive papers. The defendants' motion, which is now ripe for determination, has been referred to me a report and recommendation to the assigned district judge pursuant to 28 U.S.C. § 636(b)(1) (B) and Northern District of New York Local Rule 72(3)(c).

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004). A fact is "material," for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4; *Security Ins.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620–21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137–38 (2d Cir.1998). The entry of summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See Building Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507–08 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. *Plaintiff's Failure to Respond to the Motion*

**\*7** Before turning to the merits of plaintiff's claims, a threshold issue to be addressed is the legal significance, if any, of his failure to oppose defendants' summary judgment motion, and specifically whether that failure automatically entitles defendants to dismissal of plaintiff's complaint, based upon their motion.

This court's rules provide that

> [w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y.L.R. 7.1(b)(3). Undeniably, *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions. *See Jemzura v. Public Serv. Comm'n,* 961 F.Supp. 406, 415 (N.D.N.Y.1997) (McAvoy, C.J.)). Despite this measure of deference, the failure of an unrepresented plaintiff to oppose a summary judgment motion does not preclude the court from deciding the motion. *Robinson v. Delgado,* No. 96–CV–169, 1998 WL 278264, at \*2 (N.D.N.Y. May 22, 1998) (Pooler, J. & Hurd, M.J.); *Cotto v. Senkowski,* No. 95–CV–1733, 1997 WL 665551, at \*1 (N.D.N.Y. Oct. 23, 1997) (Pooler, J. & Hurd, M.J.); *Wilmer v. Torian,* 980 F.Supp. 106, 106–07 (N.D.N.Y.1997) (Pooler, J. & Hurd, M.J.). As can be seen by the face of Local Rule 7.1(b)(3), however, before summary judgment can be granted under such circumstances the court must review the motion to determine whether it is facially meritorious. *See Allen v. Comprehensive Analytical Group, Inc.,* 140 F.Supp.2d 229, 231–32 (N.D.N.Y.2000) (Scullin, C.J.); *Leach v. Dufrain,* 103 F.Supp.2d 542, 545–46 (N.D.N.Y.2000) (Kahn, J.).

While a plaintiff's failure to properly oppose a defendant's motion does not assure that the motion, however lacking in merit, will be granted, that failure is not without consequences. By electing not to submit papers in opposition to their motion, plaintiff has left the facts set forth in defendants' Local Rule 7.1(a)(3) Statement unchallenged. Courts in this district have routinely invoked Local Rule 7.1(a)(3) and its predecessor, Local

Rule 7.1(f), deeming facts set forth in a statement of material facts not in dispute to have been admitted based upon an opposing party's failure to properly respond to that statement. [6] *See, e.g., Elgamil v. Syracuse Univ.,* No. 99–CV–611, 2000 WL 1264122, at \*1 (N.D.N.Y. Aug. 22, 2000)* (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corrs.,* 214 F.3d 275, 292 (2d Cir.2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).

The defendants' Local Rule 7.1(a)(3) statement consists only of eight separately numbered paragraphs, the majority of which relate to facts relevant to the defense of exhaustion. [7] *See generally* Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 43–11). Based upon the record before the court these facts do not appear to be disputed by the plaintiff. In any event, I recommend that in accordance with well established practice, and notwithstanding the plaintiff's *pro se* status, the court accept the defendants' assertions of fact as set forth in their Local Rule 7.1(a)(3) Statement as uncontroverted, in light of the plaintiff's failure to respond to that statement, when reviewing the defendants' motion for facial sufficiency.

### C. *Failure to Exhaust Administrative Remedies*

**\*8** On September 12, 2006, approximately one month after his transfer out of Marcy, the plaintiff filed a grievance complaining of the June 11, 2006 incident, including the use of excessive force, the refusal of prison officials to provide him with needed medical treatment, and threats of further beating if he reported the incident. Amended Complaint (Dkt. No. 15) Exh. 2. Prior to his transfer, the plaintiff did not suggest to anyone that he was injured at the hands of the defendants Dzwonkas, Anna and Hall, or that he was threatened by those corrections officers as well as Whitmore, and did not file any complaint or grievance regarding the matter. *See id.* ¶¶ 29, 32, 34, 37. The plaintiff's September, 2006, grievance was rejected as untimely under the governing provisions of the DOCS regulations establishing the internal grievance process, Amended Complaint (Dkt. No. 15) Exh. 3, and his subsequent attempts to appeal that ruling were rebuffed. *Id.* Exh. 5. In their motion, the defendants contend that plaintiff's complaint must be dismissed in its entirety as a result of his failure to exhaust administrate remedies.

### 1. *Exhaustion Generally*

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]" *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions. An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006); *Hargrove v. Riley,* No. CV–04–4587, 2007 WL 389003, at *5–6 (E.D.N.Y. Jan.31, 2007). This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record." *Jones v. Bock,* 549 U.S. 199, 204, 127 S.Ct. 910, 914–15, 166 L.Ed.2d 798 (2007) (citations omitted); *see Woodford,* 548 U.S. at 91–92, 126 S.Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532, 122 S.Ct. at 992 (citation omitted).

***9** The failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit. *Jones,* 549 U.S. at 212, 127 S.Ct. at 919. In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal. *See Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 94–95, 126 S.Ct. at 2387–88 (holding that the PLRA requires "proper exhaustion" of available remedies). "Proper exhaustion" requires a plaintiff to

procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford,* 548 U.S. at 95, 126 S.Ct. at 2388; *see also Macias v. Zenk,* 495 F.3d 37, 44 (2d Cir.2007) (citing *Woodford,* 548 U.S. at 95, 126 S.Ct. at 2388). While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias,* 495 F.3d at 43 (quoting *Johnson,* 380 F.3d at 697–98) (emphasis omitted). In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement. [8] *Macias,* 495 F.3d at 41; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Under the prescribed algorithm, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 413; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether, through their own actions, by preventing the exhaustion of the plaintiff's remedies, they should be estopped from asserting failure to exhaust as a defense. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. In the event the proffered defense survives these first two levels of scrutiny, the court lastly must examine whether special circumstances nonetheless exist and "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable administrative procedural requirements. [9] *Macias,* 495 F.3d 41; *Hemphill,* 380 F.3d at 686.

### a) *Availability of Remedy*

With regard to the first level of scrutiny, New York prison inmates are subject to an Inmate Grievance Program ("IGP") established by the DOCS and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb.20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2d Cir.2003) and *Snider v. Melindez,* 199 F.3d 108, 112–13 (2d Cir.1999)). The IGP consists of a three-step review process. First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC")

within twenty-one days of the incident. 7 N.Y.C.R.R. § 701.5(a). The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance. *Id.* §§ 701.4(b), 701.5(b). If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision. *Id.* § 701.5(c). The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final administrative decision. *Id.* § 701.5(d). Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court. *Reyes v. Punzal,* 206 F.Supp.2d 431, 432 (W.D.N.Y.2002) (citing, *inter alia, Sulton v. Greiner,* No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec.11, 2000)). Despite an inmate's entitlement in most instances to file and pursue a grievance in accordance with the IGP, there are circumstances under which the grievance procedure nonetheless is deemed not to have been available to an inmate plaintiff. *See Hemphill,* 380 F.3d at 687–88. Thus, for example, "[e]xhaustion may be considered unavailable in situations where plaintiff is unaware of the grievance procedures or did not understand it, ... or where defendants' behavior prevents plaintiff from seeking administrative remedies." *Hargrove,* 2007 WL 389003, at *8 (citations omitted) (noting, for example, that a defendant's failure to advance plaintiff's grievances or the issuance of threats against an inmate to deter the filing of a grievance may effectively render the administrative process unavailable). When testing the availability of administrative remedies in the face of claims that undue influence from prison workers has caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would] have deemed them available." *Id.* at 688 (quotations and citations omitted); *see Hargrove,* 2007 WL 389003, at *8. In *Hemphill,* the Court noted that "threats or other intimidation by prison officials may well deter a prisoner of ordinary firmness from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts." *Lunney v. Brureton,* No. 04 Civ. 2438, 2007 WL 1544629, at *9 (S.D.N.Y. May 29, 2007) (quoting *Hemphill,* 380 F.3d at 688) (internal quotations omitted).

### b) *Presentation of Defense/Estoppel*

**\*10** The second prong of the *Hemphill* analysis focuses upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (citations omitted).

### c) *Special Circumstances*

The third, catchall factor to be considered under the Second Circuit's prescribed exhaustion rubric focuses upon whether special circumstances have been plausibly alleged which, if demonstrated, would justify excusing a plaintiff's failure to exhaust administrative remedies. *Hemphill,* 380 F.3d at 689; *see also Giano,* 380 F.3d at 676–77; *Hargrove,* 2007 WL 389003, at *10. Among the circumstances potentially qualifying as "special" under this prong of the test include where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable. *Giano,* 380 F.3d at 676–77; *see also Hargrove,* 2007 WL 389003, at *10 (quoting and citing *Giano* ).

### 2. *Plaintiff's Failure to Exhaust*

By his own admission, the plaintiff took no steps to seek internal, administrative review of his complaints until his transfer into Oneida, some ninety-three days after the alleged incident. Since, as was previously noted, the deadline for filing a grievance is within twenty-one calendar days from the alleged occurrence, 7 N.Y.C.R.R. § 701.5(a), the grievance was patently untimely and thus properly rejected as such. [10]

Applying the "ordinary fitness" standard, however, and viewing the evidence in the light most favorable to the plaintiff, a reasonable factfinder could conclude that an inmate in the plaintiff's position would have been deterred from complaining of the assault and ensuing refusal to provide medical treatment. According to the plaintiff, the beating that he received was so severe that he required surgery to repair the multiple fractures of his leg. The beating was followed by an immediate threat that if he reported the incident he would be subjected to further assaults. The plaintiff was then allegedly refused medical

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

treatment, despite severe pain, and when he was finally taken to the facility clinic, he was again warned by the corrections officers not to reveal the circumstances surrounding his injuries, a warning which, out of fear, the plaintiff heeded. In addition, the plaintiff apparently believed that the initial assault was in retaliation for his request for papers necessary to appeal the disciplinary determination which, the plaintiff claims, was based upon a false urine test result.

The fact that Mandell waited until he was transferred into Oneida to file a grievance, as well as the contents of the grievance itself, corroborate that the plaintiff feared he would be subjected to retribution if he complained while at Marcy. Mandell's grievance expressly explains that "[b]ecause of these threats, I never really told anyone what happen [sic] to me while in SHU at Marcy. However, when I was transferred from Marcy to Oneida, I filed a complaint with the medical staff and was later seen by the I.G." Amended Complaint (Dkt. No. 15) Exh. 2.

 **\*11** In their motion, the defendants do not directly contest the factual allegations underpinning the plaintiff's claims. Instead, they rely solely on the plaintiff's failure to timely exhaust administrative remedies, without addressing the issue of availability, arguing that Mandell's failure to follow the appropriate procedures and to request an extension of time to file a grievance preclude this action. Notably, the defendants ignore the facts that even though the plaintiff's grievance provided an explanation for his delay, that grievance was tersely rejected as untimely, and the defendants did not advise the plaintiff at that time that he should request an exception to the time limit from the IGP supervisor based on mitigating circumstances, or that additional information regarding his delay in filing the grievance was needed. It was not until the letter of October 6, 2006 from the Commissioner's office, responding to the plaintiff's attempted appeal of the denial of his grievance as untimely, that the plaintiff was instructed to file for an exception under section 701.6(g); by that time, one hundred and seventeen days had passed since the alleged occurrence, and the time limit for seeking extensions—forty-five days from the alleged occurrence—had long since expired.

The record now before the court reflects that the plaintiff's official outlets for reporting misconduct were foreclosed by the time he moved to the apparent safety of Oneida. Material questions of fact, however, remain as to whether administrative remedies were available for the plaintiff to exhaust prior to his transfer into Oneida. Moreover, viewing the facts in a light most favorable to the plaintiff, it is conceivable that he believed that by "appealing" the rejection of his grievance as untimely to the Commissioner and the facility superintendent he had followed the correct procedures outlined in section 701.5(c) for appealing the denial of a grievance. While the defendants have satisfied the second prong of the *Hemphill* test by preserving the defense of non-exhaustion in their answer to the plaintiff's amended complaint, it is arguable that questions of fact also exist as to whether the defendants should be estopped by their own conduct, including alleged threats and their handling of the grievance once it was filed, from relying on this defense.

In sum, when drawing all inferences and resolving all ambiguities in the plaintiff's favor, as I must, I find material questions of fact exist on the issues of whether administrative remedies were available to the plaintiff and whether the defendants should be estopped from relying on the non-exhaustion defense. *Lunney,* 2007 WL 1544629, at \*9 (citing cases). I therefore recommend that the defendants' motion for summary judgment dismissing the amended complaint for failure to exhaust administrative remedies be denied.

### D. *Personal Involvement of Defendants Whitmore, Goord and Lape*

In their motion, the defendants seek dismissal of the plaintiff's claims against Commissioner Goord, Superintendent Lape and Lieutenant Whitmore, arguing that those defendants were not personally involved in the alleged constitutional violations and therefore cannot be held responsible under section 1983.

 **\*12** A fundamental, bedrock requirement for establishing liability of a defendant under section 1983 is that the party was personally involved in some way in the alleged deprivation of constitutional rights. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 920 F.2d 880, 885 (2d Cir.1991); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must therefore show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

### 1. Defendant Whitmore

Contrary to the defendants' argument, the plaintiff's amended complaint makes factual allegations based upon which a reasonable factfinder could conclude that defendant Whitmore was personally involved in the alleged deprivation of the plaintiff's rights. The plaintiff's amended complaint alleges, and the defendants do not challenge this in their motion, that Whitmore was one of the officers who threatened the plaintiff after the June 11, 2006 incident and contributed to the plaintiff's delay in the filing of a grievance. Amended Complaint (Dkt. No. 15) ¶¶ 27–28. If the allegations in the amended complaint are proven at trial, a reasonable jury could find that Whitmore was personally involved, and thus liable for, deliberate indifference to the plaintiff's serious medical need and perhaps retaliation.[11] As a result, I find that questions of fact remain as to Whitmore's involvement in the conduct forming the basis for the plaintiff's constitutional claims, thereby precluding the entry of summary judgment dismissing the plaintiff's claims against him.

### 2. Defendant Goord

The plaintiff asserts that defendant Goord should be held liable for his injuries because of his "failure to adequately train" the officers who allegedly assaulted the plaintiff (Amended Complaint [Dkt. No. 15] ¶ A(3)), and his failure to "take disciplinary or other action to curb the known pattern of physical abuse" (Amended Complaint [Dkt. No. 15] ¶ 43). It is thus readily apparent that Mandell's claims against Goord are premised solely upon his position as Commissioner of the DOCS. It is well established, however, that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. Mere vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to bridge the gap and establish the requisite personal involvement and support a finding of liability. *Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim ... [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights.").

**\*13** While *respondeat superior* will not suffice to establish liability, culpability on the part of a supervisory official for a civil rights violation can be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds, sub. nom. Iqbal v. Hasty,* ——U.S. ——, 128 S.Ct. 2931, 171 L.Ed.2d 863 (2009); *see also Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

The plaintiff wrote a letter to Commissioner Goord after the dismissal of his grievance, in an effort to appeal the ruling that his grievance was untimely; by letter from Assistant Commissioner Edward J. McSweeney, the office of the then-commissioner—who is not a named defendant—declined to consider the plaintiff's purported appeal. Amended Complaint (Dkt. No. 15) ¶ 40. Again, these allegations alone are insufficient for a finding of liability against defendant Goord. A supervisor's failure to respond to a letter or grievance from a prisoner alone provides no basis to impute personal liability to that supervisor. *Lyerly v. Phillips,* No. 04–CV–3904, 2005 WL 1802972, at \*7 (S.D.N.Y.2005) (Castel, J.) (*citing Johnson v. Wright,* 234 F.Supp.2d 352, 363 (S.D.N.Y.2002). Additionally, supervisors are permitted to delegate responsibility for handing grievances to subordinates and may properly rely on the determinations that those subordinates make; such reliance, standing alone, is similarly insufficient to show that the supervisor failed to remedy the alleged misconduct. *Burns v. Trombly,* No. 05–CV–1204, 2008 WL 2003804, at \*13 (N.D.N.Y. May 7, 2008) (Sharpe, J.) (*citing Shabazz v. Lee,* No. 03–CV–1520, 2007 WL 119429, at \*7 n. 4 (N.D.N.Y. Jan. 10, 2007) (Homer, M.J.)). Simply stated, the mere receipt of a grievance appeal does not suffice to place a supervisor on notice that a constitutional violation has actually occurred. *See Burns,* 2008 WL 2003804 at \*15.

Commissioner Goord's only potential connection to this matter is the plaintiff's grievance filed in September of 2006. There is no indication in the record that the alleged constitutional violations were brought to the

Commissioner's attention prior to the attempted appeal. Moreover, there are no other allegations in the amended complaint, or facts in the record, that would support the plaintiff's conclusory allegations that Goord was negligent in managing his subordinates. Accordingly, because the plaintiff's claims against Goord are predicated upon nothing more than a theory of *respondeat superior,* no reasonable factfinder could conclude he was personally involved in the alleged unconstitutional conduct, and I therefore recommend that the defendants' motion for summary judgment dismissing the plaintiff's claims against defendant Goord be granted. *See Richardson,* 347 F.3d at 435.

### 3. *Defendant Lape*

**\*14** The plaintiff's claims against defendant Lape are equally conclusory and also appear to turn solely upon his supervisory role. The plaintiff alleges that defendant Lape failed to take disciplinary action to curb the known pattern of physical abuse by the defendants Dzwonkas, Hall and Anna, neglected to take corrective action to remedy the alleged denial of due process during the plaintiff's disciplinary proceeding, and did nothing to overturn the disciplinary conviction despite his knowledge of constitutional violations. Amended Complaint (Dkt. No. 15) ¶¶ 43–45, A(2). There are no facts in the record suggesting that the defendants Dzwonkas, Hall and Anna had a history of assaulting inmates that was made known to Lape prior to the June 11, 2006 assault. Similarly, there is no evidence that Lape was made aware of any constitutional defects in the plaintiff's disciplinary proceeding but failed to correct them. [12] Since the plaintiff has offered no facts beyond Lape's capacity as supervisor of the officers who allegedly beat him, and there is no proof in the record that Lape was personally involved in any of the allegedly unconstitutional conduct, no reasonable factfinder could discern a basis to hold Lape liable. *See Richardson,* 347 F.3d at 435. Accordingly, I recommend that the defendants' motion be granted and that the plaintiff's claims against defendant Lape also be dismissed.

### E. *Procedural Due Process Violation*

Although somewhat unclear, it appears that the plaintiff also seeks redress for alleged violations of his Fourteenth Amendment right to due process of law during the disciplinary proceeding that resulted in his confinement in SHU. Amended Complaint (Dkt. No. 15) pp. 16–17.

Following a hearing conducted over the period beginning on June 1, 2006, a hearing officer concluded that the plaintiff had violated prison rules prohibiting drug use, and imposed a penalty which included ninety days in SHU disciplinary confinement. While the decision was reversed on appeal, the plaintiff served sixty-nine days of the ninety-day sentence prior to the reversal. In their motion, the defendants contend that a period of sixty-nine days in SHU confinement is insufficient to implicate a protected liberty interest, and that in any event Mandell was provided all of the process that was due, and that his claim should therefore be dismissed.

To successfully state a claim under 42 U.S.C. § 1983 for denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields,* 260 F.3d 69, 79–80 (2d Cir.2000) (citations omitted); *Hynes,* 143 F.3d at 658; *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996).

### 1. *Atypical and Significant Hardship*

"[T]he Constitution [does] not require that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subjected the prisoner to 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Colon v. Howard,* 215 F.3d 227, 229 (2d Cir.2000) (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). "[A] prisoner asserting that he was denied due process in connection with segregated confinement or a loss of privileges must make a threshold showing that the deprivation of which he complains imposed ... an 'atypical and significant hardship.' " *H'Shaka v. Drown,* No. 9:03–CV–937, 2007 WL 1017275, at * 9 (N.D.N.Y. March 30, 2007) (Kahn, J. and Treece, M.J.) (quoting *Sandin,* 515 U.S. at 484). In determining atypicality, courts look at both the duration and the conditions of the confinement. *Colon,* 215 F.3d at 231 (quoting *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir.1999)). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.' " *Palmer v. Richards,* 364 F.3d

60, 64 (2d Cir.2004) (quoting *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998)).

**\*15** The Second Circuit has "emphasized that the duration of SHU confinement is a distinct factor bearing on atypicality and must be carefully considered." *Colon,* 215 F.3d at 231 (citing *Sealey,* 197 F.3d at 586). In that regard, in *Sealey* the court held that a period of confinement in SHU for one 101 days, alone, was not "atypical" for the purposes of this analysis. [13] *Sealey,* 197 F.3d at 589–90. At the same time, however, it has "also stated that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions...." *Davis v. Barrett,* 2009 WL 2411811, at \*3, 576 F.3d 129 (2d Cir. Aug.7, 2009) (quoting *Palmer,* 364 F.3d at 65) (internal quotations omitted). The question of what could be considered as "normal" SHU conditions was illuminated in *Colon* when the court concluded that such ordinary SHU conditions existed where the inmate plaintiff was

> placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day (JA 107), limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling. Visitors were permitted, but the frequency and duration was less than in general population. The number of books allowed in the cell was also limited.

*Colon,* 215 F.3d at 230.

Here, the plaintiff was confined to SHU for sixty-nine days, a period of time which, in and of itself, would not indicate atypicality. The plaintiff's amended complaint is wholly devoid of any allegations that the conditions of Mandell's SHU confinement differed in any way from normal SHU conditions. In fact, there are no allegations at all regarding his confinement in SHU, the amended complaint stating only that he was confined there from June 6, 2006 until August 14, 2006. Nor is there any other evidence in the record to suggest that the plaintiff suffered from conditions that were more severe than the normal SHU conditions. I therefore I conclude that the plaintiff has failed to meet his threshold burden of establishing that he experienced an atypical and significant hardship implicating a protected liberty interest. [14]

### 2. *Procedural Protections*

Even if the plaintiff had sufficiently alleged facts raising an issue as to whether he experienced a deprivation of a liberty interest sufficient to trigger the protections of the Fourteenth Amendment, his procedural due process claim would nonetheless fail. The procedural protections to which a prison inmate is entitled when deprived of a constitutionally cognizable liberty interest are well established, the contours of the required protections having been articulated in *Wolff v. McDonnell,* 418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974). Under *Wolff,* the constitutionally mandated due process requirements include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense. *Wolff,* 418 U.S. at 564–70, 94 S.Ct. at 2978–83. In addition, the hearing officer's determination following the hearing must be supported by at least "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985).

**\*16** The plaintiff does not allege that he was denied any of these procedural protections, nor does it appear in this instance that he could. To the contrary, the record shows that the plaintiff received advance notice of the charges against him by way of a misbehavior report. The plaintiff was offered and accepted assistance at the hearing, as well as information regarding the urinalysis test. The plaintiff appeared at the hearing, presented witnesses and evidence, and was provided a written statement by the hearing officer explaining the basis for his decision. In view of these facts, no reasonable juror could find that the plaintiff was denied his right to due process. [15] Accordingly, to the extent that the plaintiff seeks damages for an alleged violation of his right to due process in connection with his disciplinary proceeding, I recommend that the defendants' motion be granted and that the claim be dismissed.

### IV. *SUMMARY AND RECOMMENDATION*

The defendants move for summary judgment dismissing the plaintiff's amended complaint, asserting his failure to exhaust his administrative remedies, lack of personal involvement by the defendants Lape, Goord and Whitmore, and the insufficiency of the plaintiff's due

2009 WL 3123029

process claim on the merits. I recommend that the plaintiff's claims for excessive use of force, denial of medical treatment, retaliation and conspiracy be left intact despite his failure to exhaust his administrative remedies, inasmuch as material questions of fact exist as to whether the alleged threats against him by corrections officers effectively rendered those remedies unavailable and/or should estop the defendants from relying on such defense.

Because the plaintiff's claims against the defendants Goord and Lape are premised solely on their respective supervisory roles, I recommend that the defendants' motion for summary judgment in this regard be granted, and that all claims against those two defendants be dismissed. With regard to defendant Whitmore, however, I find that the plaintiff has sufficiently alleged his personal involvement, asserting that Whitmore threatened the plaintiff, and as a result, if this allegation can be proven at trial, a reasonable jury could find that Whitmore participated in a violation of the plaintiff's constitutional rights.

Finally, I recommend that the plaintiff's claim for violation of his right to due process with regard to the disciplinary proceeding be dismissed on the grounds that he has failed to make a threshold showing that an actual liberty interest was implicated by his sixty-nine days of confinement in the facility SHU, and further because, even presuming the deprivation of such a liberty interest,

the record establishes that the plaintiff was afforded all of the process to which he was constitutionally entitled. Accordingly, it is hereby respectfully

RECOMMENDED that the defendants' motion for summary judgment (Dkt. No. 43) be GRANTED, in part, and that the plaintiff's claims against the defendants Lape and Goord be DISMISSED, and that the plaintiff's Fourteenth Amendment claims for violation of his due process rights at his disciplinary hearing also be DISMISSED, but that the defendants' motion otherwise be DENIED.

**\*17** NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), and 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 3123029

Footnotes

1    On *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1)(C). However, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g .,* Paddington Partners v. Bouchard, 34 F.3d 1132, 1137– 38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate").

2    *See also* Vargas v. Keane, 93–CV–7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec.12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), aff'd, 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996).

1    From a change of address form submitted by the plaintiff, it appears that he was released from prison on or about May 28, 2008. Dkt. No. 36.

2    In light of the procedural posture of the case the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in favor of the plaintiff. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003). It should be noted that for purposes of this motion the defendants have not contested the majority of the plaintiff's substantive allegations.

3    The plaintiff also alleges that he was "set-up for a dirty urine test" by prison officials. Amended Complaint (Dkt. No. 15) ¶ 9.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 3123029

4    Special housing units are cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day. *See Samuels v. Selsky,* No. 01 CIV. 8235, 2002 WL 31040370, at *4 n. 11 (S.D.N.Y. Sept. 12, 2002).

5    As will be seen, by his failure to oppose the defendants' motion the plaintiff is deemed to have admitted the factual assertions contained within Defendants' Local Rule 7.1(a)(3) Statement. *See* pp. 13–15, *post.*

6    According to Local Rule 7.1(a)(3), *"[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."* N.D.N.Y.L.R. 7.1(a)(3) (Emphasis in original).

7    Paragraphs 3 and 4 of the defendants' Local Rule 7.1(a)(3) statement merely paraphrase the plaintiffs's allegations regarding the alleged beating and threats. *See* Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 43–11) ¶¶ 3–4.

8    As will be seen, whether the *Hemphill* test survives following the Supreme Court's decision in *Woodford,* has been a matter of some speculation. *See, e.g., Newman v. Duncan,* No. 04–CV–395, 2007 WL 2847304, at *2 n. 4 (N.D.N.Y. Sept. 26, 2007) (McAvoy, S.J. and Homer, M.J.).

9    These three prongs of the prescribed test, though distinct, plainly admit of significant overlap. *See Hargrove v. Riley,* No. CV–04–4587, 2007 WL 389003, at *8 n. 14 (E.D.N.Y. Jan.31, 2007); *see also Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004).

10    Under the IGP prisoners may request and the IGP supervisor may grant an exception to the twenty-one day filing period if "mitigating circumstances" prevented him from taking action in a timely manner. 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b). However, "[a]n exception to the time limit may not be granted if the request was made more than 45 days after an alleged occurrence." *Id.* § 701.6(g)(1)(i) (*a* ).

11    Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994); *Leach v. Dufrain,* 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (Kahn, J.) (*citing Farmer,* 511 U.S. at 837, 114 S.Ct. at 1970); *Waldo v. Goord,* No. 97–CV–1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. & Homer, M.J.) (*citing Farmer,* 511 U.S. at 837, 114 S.Ct. at 1970).

12    The disciplinary hearing, which resulted in the plaintiff's confinement in the Marcy SHU, was conducted by Captain Brown, who is not a defendant in this case. Amended Complaint (Dkt. No. 15) Exh. 1. The decision was reviewed on appeal, and the order reversing it was signed, by Donald Selsky, Director of the Special Housing/Inmate Disciplinary Program, who likewise is not a defendant in this case. *Id.* As such, the plaintiff's allegations and the evidence produced appear to contradict his claims of personal involvement on the part of defendant Lape in the course of the disciplinary proceedings.

13    District courts within this circuit have held that periods even longer than 101 days do not rise to the level of atypical and significant hardships. *See, e.g., Spence v. Senkowski,* No. 91–CV–0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (holding that a 180–day SHU sentence, served under more confining circumstances than those of the general prison population, did not infringe upon a liberty interest); *Warren v. Irvin,* 985 F.Supp. 350 353–56 (W.D.N.Y.1997) (161 days); *Horne v. Coughlin,* 949 F.Supp. 112, 116–17 (N.D.N.Y.1996) (180 days); *Nogueras v. Coughlin,* No. 94–CV–4094, 1996 WL 487951, at *4–5 (S.D.N.Y. Aug.27, 1996) (210 days).

14    Recently, the Second Circuit emphasized that "only when the conditions are uncontested may a district court resolve the issue of atypicality of confinement as a matter of law." *Davis,* 2009 WL 2411911, at *4. The decision in *Davis* is entirely consistent with the Second Circuit's court's prior determination that "[t]he content of the *Sandin* standard of 'atypical and significant hardship' is an issue of law, but if the facts concerning the conditions or the duration of confinement are reasonably in dispute, the jury (where one is claimed) must resolve those disputes and then apply the law of atypicality, as instructed by the Court." *Sealey,* 197 F.3d at 585. Accordingly, I do not regard *Davis* as an impediment to deciding the issue of atypicality as a matter of law where, as here, the plaintiff has failed to allege or come forward with any facts that would suggest atypical conditions of SHU confinement.

15    Additionally, I note that the plaintiff has failed to name as defendants either the person responsible for conducting the disciplinary proceeding, Captain Brown, or the officer issuing the May 24, 2006 misbehavior report, Sergeant Myers. Because I recommend that the plaintiff's claim be dismissed as substantively defective, I find that any attempt to amend the complaint to name such defendants would not cure this fatal defect and would therefore be futile. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.