UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────

KERRY KOTLER,

                        Plaintiff,

v.

MAUREEN BOSCO, Executive Director,                    9:17-CV-0394
Central New York Psychiatric Center;                  (GTS/ML)
JEFFERY NOWICKI, Chief of Mental
Health Treatment Services, Central New
York Psychiatric Center; EMILY GRAY,
Primary Therapist, Central New York
Psychiatric Center; MARK CEBULA,
Treatment Team Leader, Central New York
Psychiatric Center; DR. TERRI
MAXYMILLIAN, Director of Treatment
Services, Central New York Psychiatric
Center; and CHRISTOPHER KUNKLE,
Director, New York State Office of Mental
Health,

                        Defendants.

───────────────────────────────

APPEARANCES:                                          OF COUNSEL:

KERRY KOTLER
   Plaintiff, *Pro Se*
Central New York Psychiatric Center
Post Office Box 300
Marcy, New York 13403

LETITIA A. JAMES                                      CHRISTOPHER J. HUMMEL,
Attorney General for the State of New York            ESQ.
   Counsel for Defendants                             Assistant Attorney General
The Capitol
Albany, New York 12224


MIROSLAV LOVRIC, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

This matter has been referred to me for a Report and Recommendation by the Honorable Glenn T. Suddaby, Chief United States District Judge.  Currently before the Court, in this civil rights action filed by Kerry Kotler ("Plaintiff") against Maureen Bosco, Jeffery Nowicki, Emily Gray, Mark Cebula, Dr. Terri Maxymillian, and Christopher Kunkle (collectively "Defendants"), is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 71.)  For the reasons set forth below, I recommend that Defendants' motion for summary judgment be granted in part and denied in part.

# TABLE OF CONTENTS

I.   RELEVANT BACKGROUND .............................................................................. 1

  A.   Plaintiff's Claims ............................................................................................ 1

  B.   Statement of Undisputed Material Facts ...................................................... 1

II.   STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT ............... 9

III.   ANALYSIS ...................................................................................................... 11

  A.   Supervisory Liability Against Defendants Bosco and Kunkle ..................... 11

  B.   Plaintiff's First Amendment Retaliation Claim Against Defendants Gray, Maxymillian, Cebula, and Nowicki ........................................................... 16

# I.     RELEVANT BACKGROUND

## A.     Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint asserts a claim of retaliation pursuant to the First Amendment and 42 U.S.C. § 1983, against Defendants. (Dkt. No. 16.) The Court's Report and Recommendation dated May 24, 2018, thoroughly outlined Plaintiff's allegations and claims. (Dkt. No. 32.) Familiarity with the Complaint is assumed in this Report-Recommendation.

## B.     Statement of Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported by Defendants in their Rule 7.1 Statement and not denied by Plaintiff in a Rule 7.1 Response. (*Compare* Dkt. No. 71, Attach. 1 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 77 [Pl.'s Opp'n].)[1]

1.     Plaintiff is remanded to the care and custody of the Office of Mental Health ("OMH") pending a proceeding pursuant to Article 10 of the Mental Hygiene Law.

2.     At the time of the events underlying Plaintiff's First Amendment retaliation claim, he was a resident of the Central New York Psychiatric Center ("CNYPC") Sex Offender Treatment Program ("SOTP").

---

[1]     Plaintiff failed to file a response to Defendants' Statement of Material Facts and, instead, filed a "Declaration in Opposition to Defendants' Summary Judgment Motion." Plaintiff's "Declaration in Opposition to Defendants' Summary Judgment Motion" responded to the declarations that Defendants filed in support of their motion for summary judgment. (Dkt. No. 77, Attach. 1.) Based on Plaintiff's status as a *pro se* litigant, the Court attempted to correlate Plaintiff's responses to Defendants' declarations, with Defendants' Statement of Material Facts based on the portion of the record that Defendants cited in support of each asserted fact.

3.      CNYPC is a comprehensive mental health service delivery system providing a full-range of care and treatment to persons incarcerated in the New York State and County Correctional Systems as well as operating a SOTP.[2]

4.      CNYPC consists of both a 220-bed secure inpatient facility where male and female patients may be involuntarily hospitalized pursuant to the New York State Correction Law and a 303-bed secure inpatient facility for sex offenders who have been deemed "dangerous sex offenders" under Article 10 of the Mental Hygiene Law.[3]

5.      During the time period relevant to Plaintiff's claims, CNYPC-SOTP operated a prepaid phone system, also called a calling card system, that permitted residents to place outgoing phone calls to pre-approved numbers using an account balance prepaid by the resident.[4]

---

[2]      Plaintiff's response that he "lacks knowledge and information sufficient to form a belief" is insufficient to create a genuine issue of fact for trial.  *See Davis v. City of Syracuse*, 12-CV-0276, 2015 WL 1413362, at *2 (N.D.N.Y. Mar. 27, 2015) ("On a motion for summary judgment, denials of fact that are based on a lack of personal knowledge, mere information or belief, and/or inadmissible evidence are insufficient to create a genuine dispute."); *In re Horowitz*, 14-CV-36884, 2016 WL 1039581, at *1 n.2 (Bankr. S.D.N.Y. Mar. 15, 2016) ("On a motion for summary judgment, denials based on a lack of knowledge or information sufficient to form a belief are insufficient to contest a disputed fact . . . . Similarly, a response contending to neither admit or deny an allegation does not create a genuine issue of fact.").

[3]      *See*, *supra*, note 2.

[4]      Although Plaintiff "denies and does not believe that the phone system he used required phone numbers called to be 'pre-approved'" (Dkt. No. 77, Attach. 1 at 7), Plaintiff's lack of knowledge is insufficient to create a genuine issue of fact for trial.  *See*, *supra*, note 2.  In addition, Plaintiff fails to include any record citation in support of his denial.  (Dkt. No. 77, Attach. 1 at 7); *see N.Y. Teamsters v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (upholding grant of summary judgment where "[t]he district court, applying Rule 7.1[a][3] strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1[a][3] statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations"); *Archie Comic Publ'ns, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 319 (S.D.N.Y. 2003) (holding that "the facts set forth in [plaintiff's] statement are deemed established" where defendant denied assertions in plaintiff's S.D.N.Y. Local Rule 56.1 statement but declined to provide record citations in support).

6.      CNYPC-SOTP considered the use of the prepaid phone system to be a privilege that may be revoked if a resident's use of the system was found to be counter-therapeutic as it related to their treatment needs, or a risk to the safety and security of the facility.[5]

7.      Residents could send letters through regular mail.[6]

8.      Residents could have attorneys contact the facility directly to set up a call with a resident.[7]

9.      Residents could receive visitors, including attorneys, at the facility.[8]

---

[5]      *See*, *supra*, note 4.

[6]      Plaintiff is deemed to have admitted this fact as asserted because his response states "admits" then added words meant to controvert an implication of the asserted fact or to place it in context.  (Dkt. No. 77, Attach. 1 at 7); *see* N.D.N.Y. L.R. 7.1(a)(3) ("The non-movant's responses shall . . . admit[] and/or deny[] each of the movant's *assertions* in matching numbered paragraphs.") (emphasis added); *Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (citing authority for the point of law that the summary judgment procedure involves the disputation of asserted facts, not the disputation of implied facts); *cf. Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (noting that plaintiff's responses failed to comply with the court's local rules where "Plaintiff's purported denials . . . improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts"); *Goldstick v. The Hartford, Inc.*, 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make"). To the extent that a non-movant desires to set forth any additional material facts that he contends are in dispute, he or she is required by Local Rule 7.1(a)(3) to do so in separately numbered paragraphs.  In addition, Plaintiff failed to include any record citation.  *See*, *supra*, note 4.

[7]      *See*, *supra*, notes 2, 4, and 6.

[8]      *See*, *supra*, notes 4 and 6.

10.     Residents could request phone slips, which, if approved by staff, permitted the resident to make a phone call regardless of whether the resident had access to the prepaid system.[9]

11.     On September 5, 2014, Plaintiff placed a call using the prepaid phone system to a local radio station program called "Talk of the Town" (the "Program").

12.     Plaintiff's treatment team, which included Defendants Cebula and Gray (the "Treatment Team"), met with Plaintiff to discuss his phone call to the Program.[10]

13.     During the discussion, Plaintiff informed the Treatment Team that he had called the Program to discuss a recent riot incident in the forensic unit of CNYPC.  Plaintiff stated that he contacted the Program to "blow up" the CNYPC-SOTP and to discuss issues and perceived injustices that he experienced at CNYPC.[11]

14.     In light of a recent riot-type incident in the forensic unit at CNYPC, the Treatment Team concluded that Plaintiff's communication could have been interpreted by residents at CNYPC to be an incitement to act out dangerously against staff and threaten the security of the facility.[12]

15.     As a result, the Treatment Team recommended suspending Plaintiff's use of the prepaid phone system.

16.     Defendant Cebula prepared a loss of privileges form, which informed Plaintiff of the suspension.

---

[9]     *See*, *supra*, note 6.

[10]    *See*, *supra*, note 4.

[11]    *See*, *supra*, notes 4 and 6.

[12]    *See*, *supra*, note 4.

17.     Defendant Maxymillian, the Director of Treatment Services, reviewed the loss of privileges form and agreed with the Treatment Team that the suspension was appropriate to ensure the security of the facility and the safety of staff and residents.[13]

18.     Plaintiff's use of the prepaid phone system was restored on October 1, 2014.

19.     As a result, Plaintiff's privilege to use the prepaid phone system was suspended for a total of 27 days.

20.     CNYPC-SOTP had an established procedure for handling resident complaints (the "Procedure").

21.     Resident complaints were generally treated as Objections to Care and Treatment ("Objections") pursuant to 14 N.Y.C.R.R. § 27.8.[14]

22.     Pursuant to the Procedure, a resident's Objection would be forwarded to SOTP Chief of Mental Health Treatment Services (Defendant Nowicki).

23.     Pursuant to the Procedure, a resident could appeal the decision of the Chief of Mental Health Treatment Services to the Executive Director (Defendant Bosco), and then appeal the Executive Director's decision to the Commissioner's office.

24.     The Executive Director's office was responsible for transmitting the appeal to the Commissioner's office.

25.     Appeals to the Commissioner regarding the SOTP were often delegated to the Director of the Bureau of Institutional Sex Offender Treatment ("BISOT") (Defendant Kunkle).[15]

---

[13]     *See*, *supra*, notes 4 and 6.

[14]     *See*, *supra*, note 2.

[15]     *See*, *supra*, note 2.

26.     On September 11, 2014, Defendant Nowicki's office received an Objection dated September 9, 2014, from Plaintiff concerning the suspension of his privilege to use the prepaid phone system.

27.     In addition, Defendant Nowicki's office received two letters of complaint from Plaintiff dated September 5, 2014, and September 16, 2014, which were forwarded from Defendant Bosco's office to be consolidated with Plaintiff's Objection.

28.     Defendant Nowicki investigated the suspension of Plaintiff's use of the prepaid phone system and issued a response to Plaintiff dated October 3, 2014.  Defendant Nowicki's investigation determined that the suspension was appropriate to ensure the security of the facility and the safety of the residents and staff.[16]

29.     Defendant Nowicki found it reasonable to suspend Plaintiff's use of the prepaid system, but to permit Plaintiff to use phone slips to make telephone calls outside the facility, because staff would be able to review such calls to ensure Plaintiff's contact did not pose a risk to the facility.[17]

30.     Defendant Bosco's office received Plaintiff's appeal of Defendant Nowicki's decision on October 13, 2014.

31.     This appeal was received after Plaintiff's privilege to use the prepaid phone system had been restored to him.

32.     The policy of the Executive Director's office was to refer appeals to subordinate staff for an investigation and the preparation of a response.

---

[16]     *See*, *supra*, notes 2 and 4.

[17]     *See*, *supra*, note 4.

33.    Defendant Bosco reviewed and signed a response denying Plaintiff's appeal on October 27, 2014.

34.    Defendant Bosco's response concurred that Plaintiff's actions posed a threat to the security of the facility and the safety of the staff and residents.

35.    On November 3, 2014, and December 17, 2014, respectively, Defendant Bosco's office received two letters from Plaintiff seeking to appeal Defendant Bosco's determination to the Commissioner.

36.    Pursuant to the policy of the Commissioner's office, Plaintiff's appeals were forwarded to the Director of BISOT, Defendant Kunkle, for investigation and response.[18]

37.    Defendant Kunkle received Plaintiff's appeals after his privilege to use the prepaid phone system was restored.

38.    Defendant Kunkle investigated Plaintiff's appeal and concluded that his actions posed a threat to the security of the facility and the safety of residents and staff.[19]

39.    As a result, Defendant Kunkle denied Plaintiff's appeals in two separate letters dated December 18, 2014, and January 21, 2015.

### C.    Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1.    Defendants' Memorandum of Law

Generally, in support of their motion for summary judgment, Defendants assert the following three arguments: (1) Plaintiff cannot establish the personal involvement of Defendants Bosco or Kunkle because they had no opportunity to remedy the wrong after receiving Plaintiff's appeals concerning the suspension of his ability to use the prepaid phone system; (2) Plaintiff

---

[18]    *See*, *supra*, note 2.

[19]    *See*, *supra*, notes 4 and 6.

cannot establish a First Amendment retaliation claim against Defendants because (a) the suspension of Plaintiff's use of the prepaid phone system was not sufficiently adverse, and (b) Defendants would have suspended his privilege to ensure the safety and security of the facility irrespective any retaliatory motive alleged by Plaintiff; and (3) in any event, Defendants are entitled to qualified immunity because no case law existing at the time of the events giving rise to this action clearly demonstrated that suspending telephone privileges alone constituted an adverse action sufficient to establish a constitutional violation of the First Amendment where the plaintiff retains several other means of maintaining outside contacts.  (*See generally* Dkt. No. 71, Attach. 7 [Defs.' Mem. of Law].)

## 2.    Plaintiff's Memorandum of Law in Opposition

Generally, in opposition to Defendants' motion, Plaintiff asserts the following three arguments: (1) Defendants Bosco and Kunkle were sufficiently personally involved in the constitutional violation because their ratification of the other Defendants' retaliation had a continued chilling effect on Plaintiff's speech even after his ability to use the prepaid phone system was restored; (2) sufficient evidence exists in the record to establish an issue of fact for trial regarding Plaintiff's First Amendment retaliation claim against Defendants because (a) Defendants' failure to identify what Plaintiff said on the Program that was "inciteful" discredits their alleged non-retaliatory motivation for suspending Plaintiff's right to use the prepaid phone system, and (b) the temporal proximity between Plaintiff's speech on the Program and the adverse action (suspension of his use of the prepaid phone system) is sufficient to establish a causal connection; and (3) qualified immunity does not apply because it is irrelevant whether Plaintiff had other forms of communication available to him where Defendants knew, or should have known, that Plaintiff's "right to speak out is protected under the 1st Amendment."  (Dkt. No. 77 [Pl.'s Mem. of Law].)

### 3. Defendants' Reply Memorandum of Law

Generally, in their reply, Defendants assert that (1) Plaintiff cannot establish the personal involvement of Defendants Bosco or Kunkle because the suspension had ended by the time they were made aware of Plaintiff's allegations and there was no action that they could have taken to prevent the chilling effect resulting from the suspension after the suspension ceased; and (2) Plaintiff cannot establish a retaliation claim pursuant to the First Amendment against Defendants because Defendants' actions were not retaliatory but were reasonably related to safety and security concerns. (Dkt. No. 78 [Defs.' Reply Mem. of Law].)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[20] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes

---

[20]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[21] (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[22] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[23]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin,

---

[21]   *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[22]   *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[23]   *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[24]–even when the non-movant was proceeding *pro se*.[25]

## III.    ANALYSIS

### A.    Supervisory Liability Against Defendants Bosco and Kunkle

After carefully considering the matter, I recommend that Defendants' motion for summary judgment against Defendants Bosco and Kunkle be granted for the reasons stated in Defendants' memoranda of law. (Dkt. No. 71, Attach. 7 [Defs.' Mem. of Law]; Dkt. No. 78 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Defendants' arguments.

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir. 2003). A supervisory defendant's personal involvement may be alleged through facts that show: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant,

---

[24]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[25]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

after being informed of the violation through a report or appeal, failed to remedy the wrong, (3)

the defendant created a policy or custom under which unconstitutional practices occurred, or

allowed continuance of such a policy or custom, (4) the defendant was grossly negligent in

supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited

deliberate indifference to the rights of [others] by failing to act on information indicating that

unconstitutional acts were occurring."  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[26]

---

[26]      The Supreme Court's decision in *Iqbal* has raised the question of whether all of the *Colon* factors continue to be viable.  *See Lombardo v. Graham*, 807 F. App'x 120, n.1 (2d Cir. 2020) (summary order) (citing *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013)) ("Although we have observed that *Iqbal* may have heightened the requirements for supervisory liability by requiring more direct personal involvement, we need not decide this issue where, as here, the allegations are also insufficient to state a claim under *Colon*.").  "Courts within the Second Circuit have taken various approaches post-*Iqbal*, from finding that only the first and third factors remain viable, to continuing to apply all factors in the absence of Second Circuit guidance, to considering the specific constitutional provision underlying the claim and applying all the *Colon* factors to claims that rely on a standard of unreasonable conduct or deliberate indifference but declining to apply all of them where the claim requires instead a showing of discriminatory intent."  *Keyes v. Annucci*, 19-CV-0372, 2019 WL 4602240, at *17 (N.D.N.Y. Sept. 23, 2019) (Suddaby, C.J.) (citing *Montanez v. City of Syracuse*, 16-CV-0550, 2019 WL 315058, at *17-18 (N.D.N.Y. Jan. 23, 2019) (Sannes, J.) (collecting cases) (adopting the specific constitutional provision approach and applying all the *Colon* factors to the plaintiff's Fourteenth Amendment claims because they did not require a showing of discriminatory intent); *Carpenter v. Apple*, 15-CV-1269, 2017 WL 3887908, at *9-10 (N.D.N.Y. Sept. 5, 2017) (Suddaby, C.J.) (noting that the majority of district courts have continued to apply all of the *Colon* factors "where the constitutional violation at issue does not require a showing of discriminatory intent" and adopting that majority approach); *Marom v. City of New York*, 15-CV-2017, 2016 WL 916424, at *15 (S.D.N.Y. 2016) (reasoning that *Iqbal* supported the specific constitutional provision approach, and finding that all the *Colon* factors might be viable for false arrest and excessive force claims that were based on a reasonableness standard, but that the second, fourth, and fifth factors would not apply to a First Amendment retaliation claim because such claim contains an intent requirement)).

"The Court agrees with the specific constitutional provision approach discussed above because it is the most consistent with the guidance provided in *Iqbal*."  *Keyes*, 2019 WL 4602240, at *18 (citing *Iqbal*, 556 U.S. at 676 (noting that, "[t]he factors [related to whether a government official's individual actions violated the Constitution] necessary to establish a *Bivens* violation will vary with the constitutional provision at issue," discussing that the First and Fifth Amendments require that the official acted with a discriminatory purpose, and rejecting the argument that supervisors should be held liable on such claims merely because they knew of a subordinate's discriminatory purpose)).  The Court will therefore consider only the first and third

"Some courts have held that if the supervisory official acts personally in denying a grievance at various stages of the grievance process, he may be sufficiently involved in failing to remedy the situation." *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) (Hurd, J.). However, "[t]o determine personal responsibility in such a case, the grievance must allege an 'ongoing' constitutional violation that the supervisory official who reviews the grievance can remedy directly." *Levola v. Fischer*, 09-CV-0833, 2010 WL 11602538, at *20 (N.D.N.Y. Sept. 29, 2010) (McAvoy, J.) (citing *Hall v. Leclaire*, 06-CV-0946, 2007 WL 1470532, at *10 (S.D.N.Y. May 22, 2007); *Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) ("the wrong . . . [must] have been capable of mitigation at the time the supervisory official was apprised thereof")); *accord Toliver v. Fischer*, 12-CV-0077, 2015 WL 403133, at *16 (N.D.N.Y. Jan. 29, 2015) (D'Agostino, J.). "If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation." *Harnett*, 538 F. Supp. 2d at 524.

Here, it is undisputed that the only actions Defendant Bosco and Kunkle took were to deny Plaintiff's grievance appeals after his access to the prepaid telephone system was already restored. *See* Part I.B.¶¶30-31, 37 of this Report-Recommendation. Had Defendants Bosco and Kunkle granted Plaintiff's grievance appeal—as opposed to deny it, as occurred here—it would not have directly altered Plaintiff's respective position. As a result, Defendants Bosco and Kunkle were not personally involved in the alleged constitutional violation because they were not confronted with an ongoing violation. *See Mattison v. Johnson*, 17-CV-1198, 2019 WL

---

*Colon* factors because Plaintiff's claims are pursuant to the First Amendment. *Id.* at *19 ("[A] retaliation claim under the First amendment requires a showing of discriminatory intent, [and as a result,] supervisory liability will be imposed only if Plaintiff[]" establishes "that the officials either (a) directly participated in the alleged constitutional violation, or (b) created, or allowed to continue, a policy or custom under which the violation occurred.").

6074039, at *8 (Nov. 15, 2019) (Baxter, M.J.) (finding a lack of personal involvement with respect to a medical indifference claim where "there [wa]s nothing in plaintiff's grievance, or his dental records, that would have alerted Dr. Dawson to plaintiff's alleged 'ongoing pain and suffering' resulting from Tooth #7.  Nor did plaintiff's dental records reflect that plaintiff's dental issues were being disregarded or ignored by facility dental staff.  The records did, however, indicate that plaintiff was scheduled to see an oral surgeon in the near further, and had otherwise received various forms of dental treatment in the preceding year."), *report and recommendation adopted* 2020 WL 1169356 (N.D.N.Y. Mar. 11, 2020) (McAvoy, J.); *Monroe v. N.Y.S. Dep't of Corr. and Cmty. Supervision*, 16-CV-2818, 2019 WL 4688665, at *7 (S.D.N.Y. Sept. 25, 2019) (finding no ongoing violation for denial of grievance regarding alleged interruptions of the plaintiff's fast because Ramadan had already ended); *Fabricio v. Griffin*, 16-CV-8731, 2019 WL 1059999, at *11 (S.D.N.Y. Mar. 6, 2019) (finding no ongoing violation where the remaining claims in the case were excessive force and failure to intervene from an incident that occurred on a discrete date); *Allah v. Annucci*, 16-CV-1841, 2018 WL 4571679, at *9 (S.D.N.Y. Sept. 24, 2018) (finding that the plaintiff failed to allege an "ongoing" constitutional violation where he grieved being denied attendance at two discrete religious events, and thus, "there was no ongoing situation that Griffin could have remedied at the time he responded to the grievance."); *Toliver*, 2015 WL 403133, at *16 (finding that a supervisor's "denial of one grievance is not sufficient to establish his personal involvement in any alleged infringement of plaintiff's constitutional rights" where the amended complaint did not suggest that the plaintiff "had any further problems" and thus, there was an absence of allegations "of an ongoing violation that [the supervisor] could have remedied"); *Young v. Choinski*, 15 F. Supp. 3d 172, 186 (D. Conn. 2014) (a supervisory official confronted with an "ongoing" constitutional

violation who reviews a grievance or appeal regarding a violation, is "personally involved" if he or she can remedy the violation directly); *Burton v. Lynch*, 664 F. Supp. 2d 349, 363 (S.D.N.Y. 2009) (finding no ongoing violation for grievance regarding alleged use of force that "relates to past harm which has ceased"); *Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) (the wrong must have been capable of mitigation at the time the supervisory official was appraised thereof).[27]

In the alternative, I find that the record lacks evidence of Defendant Bosco and Krunkle's personal involvement because Plaintiff's grievance, which described one incident of past alleged unconstitutional conduct, is insufficient to establish a widespread policy or custom of retaliation for engaging in constitutionally protected activities. (Dkt. No. 71, Attach. 3 at 12, 16, 18); *see Keyes*, 2019 WL 4602240, at *20-21 (holding that three reports of retaliatory conduct were "not so pervasive as to plausibly suggest a policy or custom specifically of retaliation for pursuing grievances.").

As a result, I recommend that Plaintiff's claims against Defendants Bosco and Kunkle be dismissed.

---

[27]    The fact that Defendant Bosco's office received—and forwarded to Defendant Nowicki's office—two letters of complaint from Plaintiff dated September 5, 2014, and September 16, 2014, does not change this outcome because it is undisputed that Defendant Bosco did not review Plaintiff's Objection until he appealed the decision of Defendant Nowicki on October 13, 2014. *See Vega v. Artus*, 610 F. Supp. 2d 185, 198-99 (Suddaby, J.) (finding no personal involvement where the plaintiff "sent several letters and grievances to [the defendant], who then referred *all but one of them* to appropriate correctional staff for investigation . . . . [and t]he only grievance that [the defendant] allegedly reviewed directly . . . . [related to alleged misconduct that] was not ongoing when the grievance was later reviewed on appeal by [the defendant]. Since [the defendant] was presented with a grievance in which the alleged misconduct had ceased, [the defendant] cannot be found to be personally involved for failing to remedy that misconduct.").

B.      **Plaintiff's First Amendment Retaliation Claim Against Defendants Gray,
        Maxymillian, Cebula, and Nowicki**

After carefully considering the matter, I recommend that Defendants' motion for

summary judgment against the remaining Defendants be denied.

To establish a prima facie First Amendment retaliation claim, a plaintiff must establish

"(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action

against the plaintiff, and (3) that there was a causal connection between the protected speech and

the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v.

Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

If the plaintiff carries this burden, then to avoid liability the defendants must show by a

preponderance of the evidence that they would have taken action against the plaintiff "even in

the absence of the protected conduct." *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429

U.S. 274, 287 (1977). If taken for both proper and improper reasons, state action may be upheld

if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*,

89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

1.      **Adverse Action**

"Adverse action" for purposes of a retaliation claim has been defined as "retaliatory

conduct that would deter a similarly situated individual of ordinary firmness from exercising . . .

constitutional rights . . . . Otherwise the retaliatory act is simply de minimis and therefore outside

the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing

*Dawes*, 239 F.3d at 493). This is an objective test, so an adverse action may be found even if the

plaintiff himself was not subjectively deterred from exercising his rights. *Gill*, 389 F.3d at 381.

The law in the Circuit is not clear whether the deprivation of access to the prepaid phone

system for approximately twenty-seven days, constitutes an adverse action. Several courts have

16

held that a deprivation of telephone access for three days or less is the sort of *de minimis* deprivation which would not deter a person of ordinary firmness from exercising their constitutional rights. *See Santos v. Keenan*, 17-CV-0984, 2020 WL 2859202, at *10 (Feb. 6, 2020) (holding that "[d]enial of use of the telephone on [a] few occasions is insufficient to state a retaliation claim."), *report and recommendation adopted*, 2020 WL 1025189 (W.D.N.Y. Mar. 3, 2020); *Cejas v. Blanas*, 05-CV-1799, 2009 U.S. Dist. LEXIS 105329, at *12 (E.D. Cal. Nov. 9, 2009) (holding that "not being able to have a telephone conversation with friends or relatives for two non-consecutive days would [not] deter a person of ordinary firmness from future First Amendment activities."). However, here, Plaintiff was denied access to the prepaid phone system for a period of approximately twenty-seven days, almost ten-times as long. I find that Plaintiff has raised an issue of fact with respect to whether denial of access to the prepaid phone system for a period of approximately twenty-seven days, would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights. *See Collazo v. Cnty. of Suffolk*, 163 F. Supp. 3d 27, 53 (E.D.N.Y. 2016) (holding "that Plaintiff has . . . raised issues of fact as to whether [the defendant]'s report that Plaintiff received fraudulent HEAP benefit and Defendants' threat of criminal prosecution constitute adverse actions.").

The additional cases that Defendants rely on for the proposition that a temporary revocation of telephone privileges does not, on its own, constitute adverse action, are inapposite. In *Higgins v. Davis*, the court held, without any analysis, that "Plaintiff failed to demonstrate more than *de minimus* [sic] injury," where the plaintiff claimed the defendant retaliated by "(1) not allowing Plaintiff to make emergency telephone calls, (2) telling other inmates that they could not make telephone calls because of Plaintiff's complaints, (3) having Plaintiff removed from the Inmate Liaison Committee office on one occasion, and (4) not allowing Plaintiff to

17

participate in religious programs such as the Protestant Family Day Event on June 25, 1994."

*Higgins v. Davis*, 95-CV-3011, 2001 WL 262930, at *6 (S.D.N.Y. Mar. 15, 2001). The holding

in *Higgins* is not binding on this Court and I find it unpersuasive because it is not clear how long

the plaintiff was refused access to make emergency telephone calls (or any other facts

surrounding the alleged deprivations). *See Hoyt v. Andreucci*, 433 F.3d 320, 328 (2d Cir. 2006)

(the determination of whether a defendant's challenged conduct constitutes an adverse action is

"heavily fact-specific[.]").

In *Williams v. Calton*, the district court held that where the plaintiff alleged retaliation for

pursuit of his habeas proceedings, absent specific allegations "about the detrimental effects that

segregated confinement itself caused [the plaintiff's] litigation efforts, the problems he allege[d]

(limited law library time, limited telephone privileges, etc.)" he failed to plausibly allege an

actual injury resulting from official conduct. *Williams v. Calton*, 10-CV-0075, 2010 WL

3785786, at *4 (W.D. Va. Sept. 28, 2010). This conclusion is different from a finding that those

alleged retaliatory acts are *de minimis* and outside the purview of constitutional protection.

In the Second Circuit, a prisoner plaintiff asserting a claim of retaliation must allege: "(1)

the exercise of a First-Amendment-protected right, (2) that 'the defendant's actions were

motivated or substantially caused by [the] exercise of that right' and (3) that 'the defendant's

actions caused [her] some injury' sufficient for standing." *Doe v. City of New York*, 18-CV-

0670, 2018 WL 3824133, at *12 (E.D.N.Y. Aug. 9, 2018). Defendants do not appear to

challenge Plaintiff's standing and instead argue that depriving Plaintiff of access to the prepaid

phone system for a period of twenty-seven days was not sufficiently adverse because it would

not deter a person of ordinary firmness from exercising their constitutional rights. In any event,

"Plaintiff's verified [Second Amended C]omplaint, which is the functional equivalent of an

affidavit and may be relied upon by . . . [P]laintiff to oppose [D]efendants' motion for summary judgment," sets forth sufficient injuries for standing.  (Dkt. No. 1 at ¶¶ 43, 48, 58, 63-64, 94-97, 127); *McClemore v. Bosco*, 14-CV-0626, 2018 WL 1193308, at *10 (Feb. 2, 2018) (Peebles, M.J.), *report and recommendation adopted*, 2018 WL 1183384 (N.D.N.Y. Mar. 6, 2018) (Sannes, J.).

In *Hamilton v. Lyons*, the Fifth Circuit held that with respect to a conditions of confinement claim for a parolee arrested for a new crime, the denial of visitation, telephone access, recreation, mail, legal materials, sheets, and showers for a three-day period, were a "*de minimis* level of imposition with which the Constitution is not concerned."  *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996).  The claims in *Hamilton* were analyzed pursuant to the Eighth and Fourteenth Amendments.  The Eighth Amendment prohibits the imposition of prison conditions that constitute "cruel and unusual punishment."  *Rhodes v. Chapman,* 452 U.S. 337, 345 (1981). The Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute "punishment."  *Bell v. Wolfish,* 441 U.S. 520, 535 (1979).  As a result, the Court's holding in *Hamilton* that these conditions do not violate the Eighth or Fourteenth Amendment, is not helpful to determining whether—pursuant to the First Amendment—an individual of ordinary firmness would be deterred from exercising his constitutional rights if his access to use of the prepaid phone system was suspended for a period of approximately twenty-seven days.

The fact that Plaintiff was able to maintain outside contacts during the twenty-seven day suspension does not make his loss of use of the prepaid phone system a *de minimis* injury, as a matter of law, insufficient to support a First Amendment retaliation claim.  As Plaintiff testified, he made very few phone calls during the twenty-seven day suspension, compared to his normal

phone usage, and caused delays in Plaintiff's Article 10 trial.  (Dkt. No. 71, Attach 2 at 36-38, 57-64.)  Thus, I find that an issue of fact exists with respect to whether Defendants' imposition of a suspension on Plaintiff's access to the prepaid phone system for a period of twenty-seven days constitutes an adverse action.  *See McClemore*, 2018 WL 1193308, at *17 (holding that because "a reasonable factfinder could determine that placement in a [ward with more restrictive policies] would 'deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights'" summary judgment was inappropriate and "it is not for this court to resolve this factual issue at this stage.").

As a result, I recommend that Defendants' motion for summary judgment be denied on this basis.

### 2.    Proper Reason for Suspension

"If the plaintiff carries [his] burden, the defendants must show by a preponderance of the evidence that they would have disciplined the plaintiff 'even in the absence of the protected conduct.'  Thus, if taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone."  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Mount Healthy Sch. Dist.*, 429 U.S. at 287).

Here, the parties agree that Plaintiff's prepaid phone access was suspended because of his speech on the Program.  Thus, Defendants' contention that they would have taken this action in the absence of Plaintiff's protected conduct, appears to be a circular argument.  Notwithstanding, the parties dispute whether Plaintiff's comments on the Program could reasonably be interpreted to incite other residents at CNYPC to act violently against staff.  While Defendants argue that they "suspended Plaintiff's ability to use the prepaid phone system to respond to this reasonably perceived threat," Plaintiff denies making any comments that could be construed as inciting other

residents. (Dkt. No. 77, Attach. 1 at 10-11.) Defendants "therefore at this stage of the proceeding have not met their burden of establishing as a matter of law that [Plaintiff] would have been punished to the same extent he was punished in the absence of retaliatory motive." *Gayle v. Gonyea*, 313 F.3d 677, 684 (2d Cir. 2002) (holding that where it was disputed whether the plaintiff committed the most serious of the conduct alleged, the defendants had not met their burden to establish that the plaintiff would have been punished to the same extent, in the absence of a retaliatory motive).

### 3. Qualified Immunity

Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, the Second Circuit has expressed some doubt about the applicability of qualified immunity defenses to First Amendment retaliation claims. *See Washington v. Gonyea*, 538 F. App'x 23, 27 (2d Cir. 2013) (summ. order). Such claims, the Second Circuit reasoned, explicitly require an improper retaliatory motive on the part of the defendant, and "where a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law." *Washington v. Gonyea*, 539 F. App'x at 27. (quoting *Locurto v. Safir*, 264 F.3d 154, 169 (2d Cir. 2001)) (noting that "a plaintiff need only show particularized evidence of direct or circumstantial facts supporting his claim of unconstitutional motive in order to survive a motion for summary judgment on the defense of qualified immunity."); *see Yunus v. Jones*, 16-CV-1282, 2019 WL 519682, at *14 (June 21, 2019) (Baxter, M.J.) (recommending denial of a motion for summary judgment based on the defense of qualified immunity, which sought

dismissal of First Amendment retaliation claims), *report and recommendation adopted*, 2019 WL 4010260 (N.D.N.Y. Aug. 26, 2019) (Suddaby, C.J.); *Spearman v. Ide*, 17-CV-0543, 2018 WL 3382894, at *6 (D. Conn. July 10, 2018) (same); *Hammock v. Pierce*, 15-CV-9052, 2018 WL 2108244, at *8 (S.D.N.Y. May 7, 2018) (same); *see also Torres v. LaLota*, 15-CV-157097, 2017 WL 4457514, at *9 (Aug. 14, 2017) (quoting *Washington v. Gonyea*, 538 F. App'x at 27) (denying a motion to dismiss based on the doctrine of qualified immunity after applying the more stringent standard—that it appears beyond doubt that the plaintiff can prove no set of facts in support his claim that would entitle him to relief—because "where a more specific intent is actually an element of the plaintiff's claim . . . it can never be objectively reasonable for a government official to act with the intent that is prohibited by law."), *report and recommendation adopted*, 2017 WL 4443578 (E.D.N.Y. Sept. 30, 2017).  Because Plaintiff has raised a triable issue of fact with respect to Defendants' improper retaliatory motive, Defendants Gray, Maxymillian, Cebula, and Nowicki are not entitled to qualified immunity at this juncture.

As a result, I recommend that Defendants' motion for summary judgment based on the doctrine of qualified immunity be denied.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 71) be **<u>GRANTED</u>** in part, such that all claims against Defendants Kunkle and Bosco be **<u>DISMISSED</u>** from this action; and it is further respectfully

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 71) be **<u>DENIED</u>** in part, such that the claims against Defendants Gray, Maxymillian, Cebula, and Nowicki **<u>SURVIVE</u>** Defendants' motion.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

It is hereby respectfully **ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[28]

Dated: July 21, 2020
      Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[28]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).